*In re* MARRIAGE OF MADELINE S. McBRIDE, Petitioner-Appellee, and MATTHEW McBRIDE, Respondent-Appellant.

First District (5th Division)   No. 86—2439

Opinion filed February 11, 1988.

Thomas G. King, of Chicago, for appellant.

Joy M. Feinberg, of Feinberg & Barry, P.C., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Respondent, Matthew McBride, appeals from two orders entered by different trial courts in post-dissolution of marriage proceedings concerning child support payments. One order awarded child support arrearages to petitioner, Madeline McBride, and the other order modified the amount of child support payments. On appeal, Matthew contends that the trial courts committed a number of errors in computing his arrearages and child support payments. Alternatively, he argues that equitable estoppel and *laches* barred Madeline's right to arrearages and, accordingly, she was improperly awarded attorney fees. For the reasons set forth below, we affirm.

The parties were married on April 20, 1968. Three children were born as a result of the marriage: Matthew, Jr., November 21, 1970, Brian, June 19, 1972, and Megan, January 25, 1975. On November 3, 1976, Madeline filed a complaint for divorce. At that time, Madeline was earning $14,000 annually. Matthew earned $40,000 and received reimbursement for certain business expenses related to entertaining business customers on behalf of his employer, a golf magazine company.

On December 15, 1977, the circuit court of Cook County entered a judgment of dissolution of marriage,[1] dissolving the parties' marriage.

---

[1]The court's order was entitled "Judgment for Divorce," notwithstanding the fact that the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*) had become effective October 1, 1977, and the order should have been entitled "Judgment of Dissolution of Marriage." Apparently, both terms were used interchangeably by the trial courts shortly after the effective date of the Act. Here, we use the language of the Act.

Pursuant to an agreement between the parties,[2] the judgment of dissolution of marriage included the following child support provisions:

"CHILD SUPPORT PAYMENTS:

The Husband shall pay to the Wife as and for child support for each of the three minor children of the parties a sum equal to forty (40%) percent of his *'net income' as hereinafter defined,* in equal monthly installments, of not less than $650.00 per month, but no more than $1,000.00 per month, commencing June 1, 1977, and continuing until death, majority or emancipation (as hereinafter defined) of each child. Husband shall pay the Wife twice monthly on the 5th and 20th of the month, with no less than $250.00 being paid on the 5th and the balance on the 20th. The Husband shall be entitled to claim two of the minor children as dependents on his Federal and State income tax returns and shall be entitled to claim the third minor child as a dependent on his Federal and State income tax returns every other year alternating with Wife's right to claim said minor child on her Federal and State income tax returns every other year. At the end of each quarter, Husband will supply Wife with the *stubs from his paychecks* and an accounting will be made to insure that the child support payments have for the quarter been 40% of the Husband's net income for that quarter. At the end of each year, an accounting will be made to insure that the child support payments have for the year been 40% of the Husband's net income, not exceeding $12,000.00 nor less than $7,800.00, adjustment to be made by the parties at such time to comply with this formula.

NET INCOME DEFINED:

\*\*\**'Net Income' is defined as the Husband's total annual earnings and income* in each calendar year from all sources, but excluding earnings or income by way of capital gains, dividends (unless declared by a corporation employing the Husband), interest or inheritance, after deducting from that income or earnings, all Federal and State individual taxes for which the Husband shall be liable with respect hereto, including social

[2]Matthew asserts in his reply brief that the parties did not enter into an agreement with respect to child support. Rather, he contends the trial court fashioned the basis for determining the amount of child support. In support thereof, he directs this court to his recitation of the facts in his appellate brief. Matthew is apparently referring to the hearing on his petition for modification of child support, not the 1977 dissolution of marriage proceedings in which the parties undisputedly entered into an agreement concerning child support.

security deductions." (Emphasis added.)

Subsequent to the entry of the court's order, Matthew unilaterally began to deduct the additional amount of his nonreimbursed business expenses from his gross income before computing his 40% child support payments. These expenses consisted of expenditures made by Matthew to entertain current and potential customers desiring to purchase advertising space in the golf magazine. Specifically, his entertainment expenses included expenditures for lunches and dinners, country club dues, and automobile expenses.

On August 28, 1984, almost seven years after entry of the judgment of dissolution of marriage, Madeline filed a petition for a rule to show cause, asserting that Matthew was minimally in arrears for child support payments in the amount of $4,850 for the years 1981 to 1983. On May 10, 1985, Matthew filed a petition to modify his child support payments based upon a substantial change in circumstances. Each petition was heard by a different judge. On July 12, 1985, Judge Michael Jordan entered an order assessing child support arrearages against Matthew in the amount of $39,000. On August 6, 1986, Judge Julia Nowicki entered an order modifying the child support provisions to require Matthew to pay $500 per month as child support instead of 40% of his net income. This appeal followed.

Three of Matthew's arguments on appeal directly pertain to an interpretation of "net income" as defined in the child support section of the judgment of dissolution of marriage. He contends that it was not the intention of the parties that the amount of his child support payments be computed on his income before deducting his nonreimbursed business expenses for entertaining business clients; that those expenses cannot be considered as part of his net "income or earnings" based upon the Internal Revenue Code's definition of those terms; and that since the Internal Revenue Service allows a deduction for nonreimbursed business expenses, the same deduction should be allowed in arriving at his net income.

■ It is well established that a trial court should construe settlement agreements in marriage dissolution proceedings to give effect to the intention of the parties. Agreements which seek to provide support to children receive special care and consideration by our courts. (*Schwartz v. Schwartz* (1966), 69 Ill. App. 2d 128, 216 N.E.2d 505.) A determination of child support, and modification thereof, lies within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion. *In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537.

■ Here, we find neither a misinterpretation of the parties' in-

tention nor an abuse of discretion by the trial court. With respect to the intention of the parties, Matthew merely asserts that since he had not filed a Federal form 2106 with his income tax return claiming deductions for his nonreimbursed business expenses prior to the entry of the 1977 judgment of dissolution of marriage, the parties did not contemplate, and therefore did not intend, that those expenses be included as part of his net income. We find this argument without merit. The parties' agreement specifically spelled out the items not includable in determining Matthew's net income, *i.e.*, "income earned by way of capital gains (unless declared by a corporation employing the Husband), interest or inheritance, after deducting from that income or earnings, all Federal and State individual taxes for which the Husband shall be liable with respect hereto, including social security deductions." On the other hand, Matthew's nonreimbursed business expenses could have been included by him in negotiating his agreement with Madeline in determining his child support payments, especially in light of the fact that even though he contends that *he* did not "contemplate" these expenses prior to the entry of the 1977 judgment of dissolution of marriage, he in fact had to be aware of them since he incurred them in 1977 as evidenced by his April 1978 income tax return, in which he claimed a deduction for them. Accordingly, we are of the opinion that Matthew's argument on this issue is an attempt, in hindsight, to obtain a "better deal" than the one he agreed upon.

In connection with the above argument, Matthew also contends that the trial court misinterpreted the terms "earnings" and "income." Specifically, he asserts that "the concept 'earnings' does not include monies received but used to acquire disposable income," *i.e.*, his nonreimbursed business expenses which were used by him to "earn a living." As pointed out above, however, the parties themselves defined these terms in defining "net income," which did not include a provision for nonreimbursed business expenses as a deduction. Accordingly, whether Matthew used some of his earnings for business expenses or other general expenses, those expenditures were not includable as a deduction from his gross earnings pursuant to the parties' agreement. Absent some ambiguity in the definition of "net income," the trial court was compelled to follow the agreement of the parties. (*In re Marriage of Thaden* (1983), 119 Ill. App. 3d 538, 458 N.E.2d 877.) We find no ambiguity and, accordingly, hold that the trial court properly interpreted the agreement with respect to these terms.

We similarly reject Matthew's argument that since the Inter-

nal Revenue Service allows nonreimbursed business expenses as a deduction against taxable income, the same deduction should be allowed in arriving at the base figure (net income) upon which his child support payments are determined. We first observe that although it would be appropriate to apply tax law principles to this matter had the parties provided that a determination of Matthew's net income be based upon that figure reported in his annual income tax return, it is inappropriate to do so where, as here, the parties specifically defined that term as "total annual earnings and income," as evidenced by "the stubs from his paychecks," less the deductions enumerated by the parties. Moreover, Matthew cites no authority, nor are we aware of any, for his position that the Internal Revenue Code "Bible" be used to determine the meaning of net income.

■ Matthew further contends that the trial court erroneously applied the statutory guidelines of sections 504[3] and 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, pars. 504, 505) in compelling him to pay $500 per month for child support and in allowing Madeline to pay nothing to him for the support of their son, Matthew, Jr., who moved in with him on a full-time basis on July 1, 1984.[4] Specifically, Matthew points to section 505(a), which sets forth guidelines in determining the percentage of a supporting party's net income to be awarded as child support which, in this matter, would be 25% for two children and 32% for three and to section 505(a)(3)(h), which provides that "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income" shall be considered by the court as a deduction from gross income in determining the amount of child support. Ill. Rev. Stat. 1985, ch. 40, pars. 505(a), 505(a)(3)(h).

We first observe that the percentage guidelines set forth in section 505(a) establish a "minimum" amount of a supporting party's net income, not a "maximum." (See *In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 492 N.E.2d 622 (the guidelines provide a "starting point" to begin an analysis of child support).) Moreover, as we previously stated, a determination of the proper amount of child support, and modification thereof, lies within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion. (*In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478

---

[3]We do not consider section 504 since it pertains to awards of maintenance to spouses, it is not at issue here, and Matthew makes no argument with respect to that section.

[4]Matthew, Jr., is now living with Madeline and has been for the past year.

N.E.2d 537.) We further note that the factors to be considered by a court in exercising its discretion are the financial resources of the children, the financial status of the custodial and noncustodial parents, the standard of living the children would have enjoyed had the parties' marriage not been dissolved, and the physical, emotional and educational needs of the children. *In re Marriage of Runge* (1981), 102 Ill. App. 3d 356, 430 N.E.2d 58.

■ Here, as evidenced by the trial court's order modifying Matthew's child support payments, the court considered the following facts in determining child support: Matthew, Jr., had been residing with Matthew on a full-time basis since July 1, 1984; Madeline's present earnings were $50,500 gross annually, she received $275 per month as reimbursement for business expenses from her employer, and her debts were greater than Matthew's; that Matthew's earnings were $51,000 gross annually, he received $16,000 as reimbursement for his annual business expenses from his employer, and his and his present wife's 1985 Federal tax return disclosed a joint gross income of $103,984. The court also considered expenses incurred on behalf of the children of the parties. Based upon these facts, we cannot conclude that the modified monthly child support payment of $500 for the children living with Madeline at the time of the entry of the court's order was an abuse of discretion.

■ In conjunction with the foregoing argument, Matthew also contends that the trial court improperly considered the income of his present wife in determining the amount of child support, as evidenced by the court's statements pertaining to their joint income tax return and its additional statement that it was taking "into account Anne McBride's income, to determine what money is available to Matthew McBride for payment of child support."

Although the financial status of a current spouse should not be considered in determining the ability of that spouse to fulfill his obligation of child support (*Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809), here, contrary to Matthew's interpretation of the objected-to statements, we believe it is clear that the court was merely recognizing that the amount of child support payable by Matthew from his earnings would not endanger his and his present wife's needs. In other words, the court's statements indicate an assessment of the financial circumstances and needs of Matthew and his wife, as well as the minor children, which demonstrates an effort to reach an equitable conclusion in exercising its discretion in determining the amount of child support. (See *Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820.) There is no indication that the court

was actually basing its award solely on the combined salaries of Matthew and his present wife. We therefore find no error.

Matthew's additional argument on this issue, that his non-reimbursed business expenses should be excluded from his gross income because they are the equivalent of "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income" (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(3)(h)), also must be rejected. In its order, the trial court specifically found that there was insufficient evidence that these expenses were necessary to generate income. We further observe that Matthew cites to no authority in his appellate brief that nonreimbursed business expenses are the equivalent of debts incurred to produce income, nor has our research revealed any. Moreover, as mentioned previously, the parties specifically defined "net income" in their 1977 agreement, which did not include Matthew's nonreimbursed business expenses as a deduction prior to computing child support and which is binding upon Matthew. Unlike modifying the amount of child support based on substantial change, to now substitute the statute's definition of net income would be to rewrite the parties' agreement to add, rather than modify, a term of the agreement, which we cannot do. Accordingly, we find no reason to disturb the trial court's finding on this issue.

Matthew next argues that the trial court failed to take judicial notice of and follow another trial court's decision, entered a week prior to the judgment in the instant case, finding that business expenses should be deducted from gross earnings in determining child support. Although a trial court can take judicial notice of another trial court's decisions, we are aware of no rule that mandates one trial court to follow another in a separate child support matter. We further observe that the case cited by Matthew in support of this argument, *Filrep v. Barry* (1980), 88 Ill. App. 3d 935, 410 N.E.2d 1137, did not hold that a trial court give precedential effect to another trial court's "decision." *Filrep* merely set forth the traditional rule that a court is not bound to and ordinarily will not take judicial notice of the proceedings or record in another cause, whether such cause was tried in the same court or another court, although it may do so where injustice otherwise will result. Nothing in the record before us suggests that any injustice has resulted from the trial court's alleged failure to follow a prior decision by another court. Accordingly, we reject this claim of error.

Matthew further argues that the trial court improperly interpreted the relative financial condition of the parties in assessing its

child support order. He specifically points to the rise in Madeline's income from $14,000 at the time of the original dissolution of the parties' marriage to $50,500 and the fact that she has a substantial equity in her home where he has little or none.

In order to obtain a modification of child support, the moving party must allege and sustain facts demonstrating a substantial change in circumstances. (*Baker v. Baker* (1977), 53 Ill. App. 3d 186, 368 N.E.2d 379; Ill. Rev. Stat. 1985, ch. 40, par. 510(a).) In addition, as previously noted, factors to be considered are the needs of the child, the financial status of the noncustodial parent, the financial status and needs of the custodial parent, the physical, emotional and educational needs of the child, and the standard of living the children would have enjoyed had the parties not dissolved their marriage. *In re Marriage of Runge* (1981), 102 Ill. App. 3d 356, 430 N.E.2d 58.

Here, Matthew made no showing of any major decrease in the needs of the two minor children residing with Madeline, nor any major increase in any of his other obligations. In addition, the only change in Matthew's financial circumstances was, in fact, an increase of earnings from $40,000 annually to $51,000, plus $16,000 which he received as reimbursed business expenses from his employer. The record further reflects that Madeline's debts were greater than Matthew's despite her increase of salary from $14,000 annually to $50,500, plus $3,300 which she received as reimbursement of expenses from her employer. Accordingly, rather than Matthew proving a detrimental change in his financial circumstances, the record reveals an improvement. At the same time, we find insufficient evidence of a comparable improvement in Madeline's financial circumstances. Based on the foregoing, this court cannot conclude that Matthew made a sufficient showing of a substantial change in circumstances requiring more of a modification of child support than that granted by the trial court.

■ Matthew's final contentions are that *laches* and equitable estoppel operated as a bar to Madeline's right to arrearages and that the trial court improperly assessed attorney fees of $2,000 against him based on its finding of arrearages. Matthew predicates this argument on Madeline's alleged delay of seven years in bringing an action for arrearages and accepting the tendered child support without, during that time, requesting the court to construe the language of the judgment for dissolution of marriage as it related to child support.

It is well settled that past due installments of child support are vested rights of the designated recipient and cannot be terminated by a defendant or modified as to time or payment (*In re Marriage of Mc-*

*David* (1981), 97 Ill. App. 3d 1044, 425 N.E.2d 442); modification of a child support order is solely a judicial function which is to be administered only by a court and in its discretion (*Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 390 N.E.2d 488). Application of the doctrine of *laches* is appropriate only where the failure to assert a right along with a lapse of time and other circumstances causes prejudice to the adverse party, and equitable estoppel applies only where a party establishes reliance on the other party's acts or omissions. *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.

We find the case of *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, analogous to the instant situation. In *Finley*, the husband unilaterally reduced his child support payments over the years each time one of his children became emancipated. The *Finley* court held that this unilateral reduction of child support payments constituted a modification of the support order and, therefore, was impermissible. Here, we find that Matthew's unilateral deduction of his nonreimbursed business expenses before computing his child support payments was the equivalent of an impermissible modification of the child support order. We further observe that it was Matthew's obligation under the law to seek a modification of the 1977 judgment order, not Madeline's to seek a construction of it; the responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstance. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12.) We also find that the facts of this case fail to show either a prejudice to Matthew by Madeline's failure to assert her right for arrearages or any reliance by Matthew upon her alleged seven-year delay in asserting that right.[5] Accordingly, we conclude that Matthew's claim of *laches* and/or equitable estoppel lacks substantive merit.

Since we have determined that Madeline's claim for arrearages in child support was meritorious, we also affirm the trial court's order awarding attorney fees.

For the foregoing reasons, therefore, both orders of the trial courts are affirmed.

*Affirmed.*

LORENZ, P.J., and PINCHAM, J., concur.

---

[5]In fact, Madeline objected to Matthew's unilateral act of deducting his nonreimbursed business expenses prior to computing his child support payments.