BETTY IVANYI, Plaintiff-Appellee, v. PAUL D. GRANOFF, Defendant-Appellant.—BETTY IVANYI, Plaintiff-Appellant and Cross-Appellee, v. PAUL D. GRANOFF, Defendant-Appellee and Cross-Appellant.

Second District   Nos. 2—87—0981, 2—87—1117 cons.

Opinion filed June 29, 1988.

William C. Murphy and Patrick M. Kinnally, both of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, and Leon I. Finkel and Ilene E. Shapiro, both of Kalcheim, Schatz & Berger, of Chicago (Michael J. Berger, of counsel), for Paul D. Granoff.

Steven N. Peskind, of Law Offices of David P. Peskind, Ltd., of Aurora (David P. Peskind, of counsel), for Betty Ivanyi.

JUSTICE NASH delivered the opinion of the court:

This case presents consolidated cross-appeals of judgments awarding plaintiff child support of $500 per month and attorney fees and costs of litigation of $11,103. Plaintiff, Betty Ivanyi, brought this action on July 8, 1986, pursuant to the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2501 *et seq*.) seeking a judgment finding that defendant, Paul Granoff, was the natural father of her child, Pamela, born in 1980; a child support award for Pamela; and, attorney fees and costs of litigation resulting from this action. Defendant admitted the paternity of the child, and the trial court entered orders relating to paternity, custody, visitation, child support and attorney fees. The court found that the statutory guidelines for child support contained in section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)), as incorporated in section 14(a) of the Illinois Parentage Act of 1984 (Parentage Act) (Ill. Rev. Stat. 1985, ch. 40, par. 2514(a)), were not applicable to the case and awarded child support of $500 per month, an amount the court determined to be reasonable based on the evidence presented.

Plaintiff appeals, contending that (1) the trial court erred by failing to follow the child support guidelines contained in section 505(a)

of the Dissolution Act; (2) section 14(a) of the Parentage Act violates the equal protection clause of the Federal Constitution if that section does not mandate the application of section 505(a) of the Dissolution Act; and (3) the child support award was an abuse of discretion because it was based on defendant's "spendable income" rather than his net income, as required by section 505(a) of the Dissolution Act. In his cross-appeal, defendant contends that the award of attorney fees and costs of litigation to plaintiff in the amount of $11,103, pursuant to section 17 of the Parentage Act (Ill. Rev. Stat. 1985, ch. 40, par. 2517), was an abuse of discretion.

The issue relating to attorney fees incurred by plaintiff to maintain the paternity action and the amount of child support were the only questions resolved by judicial determination as the parties had entered into a stipulation as to paternity, custody, visitation and related matters, and judgment was entered thereon.

At trial, Sherwin Mallis, defendant's tax accountant, was called as an expert witness by both parties. Plaintiff did not call any other expert witness. Mallis had prepared defendant's Federal tax returns for the years 1980 through 1986, and the returns were admitted into evidence showing defendant's gross wages as follows:

| | |
|------|-----------|
| 1980 | $ 77,500 |
| 1981 | 68,000 |
| 1982 | 82,500 |
| 1983 | 58,500 |
| 1984 | 56,000 |
| 1985 | 2,000 |
| 1986 | 2,000 |

Defendant, a pediatrician, was paid these wages by Pediatrics Associates, S.C., his wholly owned professional corporation. The corporation had also paid him gross wages of $5,000 and $25,000 in April 1987 and May 1987, and no testimony was presented as to any anticipated wages he would receive for the remainder of 1987. Mallis testified that the decision to decrease defendant's salary in 1985 was made in December 1984 and was not motivated by this paternity action. Mallis testified that because defendant's corporation had tax credit carry forwards, and any wages paid to defendant would have been taxed at a rate of 50%, a decision was made to decrease defendant's salary to $2,000 in 1985. Mallis also stated that he advised defendant to maintain his $2,000 salary level in 1986 because of extraordinary expenses contemplated by the corporation, including the addition of another doctor and the relocation of defendant's office. Defendant testified that he was in the process of moving one of his offices to a space dou-

ble that of the old office, the capital costs of expansion were approximately $37,000, and he was in the process of expanding another office which required the purchase of additional equipment.

Before considering other items of income on defendant's 1986 tax return, we note evidence relating to other assets (the New York assets) held by Henry Granoff, defendant's father. When defendant was under 18 years of age, Henry Granoff sold his business and used the sales proceeds to establish trusts for his sons, including defendant. The trusts were terminated 10 to 20 years ago; the assets were then allocated between the sons. Defendant's father maintained complete control over the investment and management of the assets, and defendant had no access to the investments or income thereon. However, pursuant to tax laws, defendant was required to report interest, dividends and capital gains generated by these assets. Except insofar as necessary to pay the taxes on the income generated by the New York assets included in defendant's tax return, defendant did not receive any funds relating to these assets until 1985. At the time Mallis advised defendant to reduce his 1985 salary to $2,000, Mallis contacted Henry Granoff to determine whether he would distribute funds to defendant to replace the decrease in defendant's 1985 salary. Mallis testified that, while reluctant to part with any of the New York assets, Henry Granoff agreed to distribute $5,500 per month to defendant. At some time in 1985, Mallis negotiated with Henry Granoff to increase distributions to $7,000 per month and, at the time of trial, defendant continued to receive this monthly distribution. Plaintiff has characterized these distributions as an "allowance" from defendant's father, has noted that the taxes attributable to this "allowance" were paid by defendant's father, and the distributions were net of these taxes.

Defendant's 1986 tax return also showed interest and dividend income of $137,270, and he testified that a substantial portion of this income related to the New York assets. Plaintiff's counsel attempted to question Mallis regarding the basis for including the interest and dividend income in defendant's return, and, in response to counsel's questions, Mallis testified that defendant had not received the income, either actually or constructively; tax law merely required inclusion.

In 1986, defendant reported a net capital gain of $141,064 which was attributable to the sale of New York assets. Mallis testified that Henry Granoff decided to sell a substantial amount of assets in 1986 because the maximum tax on capital gains was increasing from 20% to 28% effective January 1, 1987. Defendant's returns for the periods 1980 through 1985 indicated net capital gains substantially lower than

the gains reported in 1986.

Excluding defendant's wages of $2,000, and the interest, dividend and capital gain income reported on his 1986 Federal tax return, defendant reported a net loss, principally due to net partnership losses, of $17,634. Defendant's reported 1986 gross income was $262,600. While other testimony relative to defendant's income and financial position was given at trial, a detailed recitation of such testimony would only unduly lengthen this opinion. In summary, plaintiff attempted to elicit testimony to establish that defendant derived benefits from his medical practice which were "in the nature of income," and not reported on his individual income tax return; some of the business expenses of defendant's corporation were extravagant and defendant derived a direct benefit from these expenses; and loans received by defendant from his corporation were equivalent to income.

Defendant also testified that he had maintenance and child support obligations from a prior marriage requiring him to pay maintenance of $1,250 per month, child support of $250 per month for each of his two children until age 18, medical and college expenses of his children, and various other items. Defendant's eldest daughter was 18 years of age or over at the time of trial and attending college at a cost of $12,000 per year. Defendant discontinued his child support payments for his younger daughter when she moved in with him on a full-time basis, and he assumed responsibility for her financial support; he testified to the expenses he incurs to support this child. Plaintiff argues in her brief that defendant's total annual maintenance and child support obligations are approximately $33,432, but the trial court approximated these obligations to be $48,000. Plaintiff's brief does not specify the expenses considered in arriving at maintenance and support obligations of $33,432, but we note that it does not refer to defendant's expenses attributable to housing his younger daughter.

Plaintiff testified that, while she worked a full-time and a part time job through either 1984 or 1985, her current employment was only part time, and she earned gross wages, based on her most recent pay check, of $584.43 for a two-week period. Plaintiff's pay stub as of June 20, 1984, showed gross wages and taxes to date of $5,930.10 and $1,069.73, respectively. Plaintiff also testified that she received child support for her two children from a prior marriage in the total amount of $400 per month. Plaintiff's rent and utilities for her household totaled $730 per month, and she estimated that she spent $175 per month for Pamela's meals, school lunches and swimming lessons. Pamela is enrolled in tutoring lessons at a cost of $230 per month but defendant pays for these lessons. Plaintiff testified that she had $323

in her checking and saving accounts and owned no stocks or bonds.

The trial court entered an order awarding plaintiff, retroactive to June 1, 1987, child support in the amount of $500 per month, finding:

"B. The statutory guidelines contained in Illinois Revised Statutes, ch. 40, §505(a), as incorporated in Illinois Revised Statutes, ch. 40, §2514(a), are not applicable in this case.

C. The Court has determined a reasonable amount of support in this case based on the evidence presented.

D. Paul has spendable income of at least $7,000.00 per month. PAUL has prior Court-ordered obligations of support and maintenance to his former wife and children. PAUL has a spendable income of approximately $3,000.00 per month after payment of the aforesaid prior Court-ordered obligations."

The court further ordered defendant to pay for all of Pamela's medical, dental, optical, orthodontic, psychological and psychiatric expenses, and all reasonable expenses, above and beyond $500 per month, that defendant would pay if Pamela were living with him, which may include tutoring, camp, schooling, music, and the arts. The order provided that, until such time as defendant is no longer obligated to pay Pamela's child support, defendant maintain a life insurance policy with a face value of $100,000 naming Pamela as beneficiary.

After the trial on child support, plaintiff filed a revised petition for attorney fees and costs arising in connection with this paternity action totalling $12,003.30, attaching an itemized schedule describing the services rendered, time expended, and the hourly rates of David Peskind, plaintiff's counsel, and his staff; copies of the original time records were attached. At the evidentiary hearing of this plaintiff's petition, defendant stipulated to Peskind's hourly rate of $125 and $100 for court and office time. Peskind testified that his petition included amounts for other members of his staff, including Steven Peskind, a practicing attorney for in excess of two years, two law clerks and a paraprofessional. Steven Peskind's hourly rate for legal services was $75, and the hourly charge for the law clerks and paraprofessional was $35. Peskind testified that the petition contained a true and accurate recordation of time records, to which defendant objected based on a lack of foundation as to those individuals who performed services other than Peskind. Thereafter, Peskind testified to his office procedures for recording and billing time for professional services rendered, and stated that the time slips completed by himself and his staff were kept in the usual and normal course of his business. Peskind opined that the legal services rendered were reasonable and

necessary for the proper representation of plaintiff and Pamela, and stated that he would testify to each item contained in the petition, if necessary. Defendant again objected, stating that "I have no objection to Mr. Peskind's time. My objection [is] as to the time that his associates put forth." Defendant did not request a continuance so that he could subpoena Peskind's staff members who charged time to the case but proceeded to his cross-examination of Peskind. At the conclusion of evidence presented at the fee hearing, the court asked defendant's counsel whether he wished to present any further testimony, and he declined to do so.

Attorney Peskind was questioned during cross-examination regarding his position taken during trial on retroactive child support in which Peskind had argued that plaintiff was entitled to child support retroactive to Pamela's birth based on section 14(b) of the Parentage Act (Ill. Rev. Stat. 1985, ch. 40, par. 2514(b)). After arguments, Peskind conceded that the court's discretion to order retroactive child support was limited by the effective date of section 14(b) of the Parentage Act, "August 25, 1986 [sic]." During defendant's cross-examination of Peskind at the hearing on fees, Peskind stated that he had not read the statute (Ill. Rev. Stat. 1985, ch. 40, par. 2514(b)) to determine its effective date until the day of the trial on the child support issue, and after the trial court ruled on the issue of retroactive child support, he did not pursue the matter further.

The trial court, after reduction for certain improper charges, awarded plaintiff attorney fees and costs of litigation totalling $11,103. Defendant has cross-appealed contending that the trial court's award of attorney fees and costs of litigation was an abuse of discretion because the fees were not reasonable or necessary, plaintiff's counsel did not exhibit a high degree of responsibility in the preparation of the case, and plaintiff received no benefit from her counsel's services.

■■ In her appeal, plaintiff contends first that the trial court's finding that the statutory guidelines contained in section 505(a) of the Dissolution Act were not applicable in this case was erroneous, and if section 14(a) of the Parentage Act does not require application of section 505(a) of the Dissolution Act in paternity cases, section 14(a) of the Parentage Act violates the equal protection clause of the Federal Constitution.

We agree that section 14(a) of the Parentage Act does mandate application of section 505(a) of the Dissolution Act in determining the child support award in this case, but find plaintiff's argument that the trial court failed to consider that section to be contrary to the record.

The Parentage Act governs the legal relationship between a child and the natural parent and delineates, among other things, the obligations arising incident to such relationship. (Ill. Rev. Stat. 1985, ch. 40, par. 2502.) Upon a determination of parentage, the trial court's judgment

"shall contain or explicitly reserve provisions concerning any duty and amount of child support *** which the court shall determine in accordance with the relevant factors set forth in the 'Illinois Marriage and Dissolution of Marriage Act,' approved September 22, 1977, as amended, and any other applicable law of Illinois, to guide the court in a finding in the best interests of the child. Specifically, in determining the amount of any child support award, the court shall use the *guidelines and standards* set forth in subsection (a) of Section 505 of the Illinois Marriage and Dissolution of Marriage Act, approved September 22, 1977, as amended." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, par. 2514(a).)

Section 505(a) of the Dissolution Act provides:

"Child Support ***.

(a) ***

(1) The Court shall determine the minimum amount of support by using the following *guide lines*:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |
| 2 | 25% |
| 3 | 32% |
| 4 | 40% |
| 5 | 45% |
| 6 or more | 50% |

* * *

(5) If the *net income* cannot be determined because of default *or any other reason*, the court shall order support in an amount considered reasonable in the particular case." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 40, pars. 505(a)(1), (a)(5).)

While the trial court's order stated that the statutory guidelines in section 505(a) of the Dissolution Act were not applicable in this case, it is clear that the trial judge found that the percentage "guidelines" in section 505(a)(1) of the Dissolution Act were inapplicable, and instead, relied on a statutory provision similar to that of section 505(a)(5) of the Dissolution Act contained in section 505(a) of the Dissolution Act prior to amendment by Public Act 84—888 (Pub. Act 84—888, eff. Sept. 23, 1985). The trial judge stated:

"I've thought about this before, and this is the first case I've had, and I've done some outside study on it, on cases; and I'm of the opinion that the Blaisdell case stands for the proposition that the Judge does not have to follow the statutory amount in this type of a case. This is not the average type of a case where we have a wage earner that comes in here with a fixed income, what we call the middle income bracket, who tries to show the Judge, I can't pay a certain amount because I have all these expenses.

This is a situation where Plaintiff has some burdens. Plaintiff had a burden to show me what this doctor makes.

After listening to the accountant for two days, having looked at the exhibits that have been offered, it would have been very helpful if we had another accountant here testifying on behalf of the Plaintiff to give me some idea of that person's interpretation of these accounting principles. This man was called and stipulated to be an expert. I listened to him testify. I looked at the documents. I have no special accounting background. And after listening to the accountant and the doctor for a period of two days, I am thoroughly confused on what this man's income is, what the man's income is that I'm to use if I were to apply the statute.

The Blaisdell case at one point does point out that if the total gross income cannot be determined because of defaults or other reasons—I emphasize or other reasons—the Court shall order maintenance or support or both in the amount considered reasonable in the particular case. [(*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1038, 492 N.E.2d 622, *quoting* Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a).)] Well, hasn't that always been the standard, that we try and determine what is reasonable in the particular case and the statute and the Blaisdell case ***."

While the *Blaisdell* case discusses section 505(a) of the Dissolution Act prior to its amendment by Public Act 84—888, the amendment does not change the result in this case. Under the present statute, if the trial court is unable to determine the "net income" of a supporting party, the court must order a reasonable amount of child support based on the case. (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(5).) Under prior law, if the trial court was unable to determine the supporting party's "total gross income" the court was required to fix child support at an amount deemed reasonable under the circumstances. (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a).) Here, it is clear that the

trial judge concluded that he was unable to determine defendant's gross income, and plaintiff's argument that the trial judge failed to consider section 505(a) of the Dissolution Act lacks merit.

Furthermore, while not controlling, we note that the percentage guidelines set forth in section 505(a)(1) of the Dissolution Act originated from informal guidelines used by the domestic relations division of the circuit court of Cook County (*In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1039-40, 492 N.E.2d 622) which were used to determine child support orders in "typical" medium-income situations. (*Blaisdell*, 142 Ill. App. 3d at 1039, citing Levin, *The Use (and Abuse) of the Child Support Schedules in Illinois*, 71 Ill. B.J. 314, 330 (1983).) This case clearly does not present the typical medium-income situation.

■ Plaintiff next contends that the trial court abused its discretion by determining defendant's child support obligation based on his "spendable income" rather than his net income as required by section 505(a) of the Dissolution Act. (Ill. Rev. Stat. 1985, ch. 40, par. 505(a).) Plaintiff premises her argument on the trial court's ruling that section 505 of the Dissolution Act was not applicable to this case, reiterates her arguments made in the trial court regarding defendant's net income, and cites an additional source of income not argued in the trial court, namely 1986 capital gain income of $202,460 not reportable for Federal income tax purposes.

As previously noted, the trial court did not rule that section 505 of the Dissolution Act was inapplicable in this case but found that defendant's net income was indeterminable on the evidence offered, and we agree with that conclusion. As the trial judge noted, defendant was not a typical wage earner. A substantial amount of his income reported for Federal income tax purposes was interest, dividend, and capital gain income, and while we do not hold that these items never enter into the computation of net income under sections 505(a)(1) and (a)(3) of the Dissolution Act (Ill. Rev. Stat. 1985, ch. 40, pars. 505(a)(1), (a)(3)), we cannot conclude on this record that these items should be included here. There was unrebutted testimony that defendant was required to report these items for Federal tax purposes, but that he did not receive this income, either actually or constructively. While it may be appropriate to apply tax law principles in the determination of a supporting party's net income, there is no authority for the "position that the Internal Revenue Code 'Bible' be used to determine the meaning of net income." (*In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 510, 519 N.E.2d 1095.) Here, plaintiff did not call an expert witness, other than defendant's tax ac-

countant, to testify regarding defendant's income, and presented no evidence to refute Mallis' testimony that defendant does not actually or constructively receive the interest, dividend, or capital gain income he reports for tax purposes. We decline to speculate as to a legal theory which requires defendant to report amounts for income tax purposes that he has not actually or constructively received, but from our review of the record, we cannot conclude that defendant will ever receive this income except for the current net monthly distributions of $7,000 which were authorized by his father. The possibility of future financial resources of a party is not considered. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 134, 416 N.E.2d 785; see also *Schwartz v. Schwartz* (1976), 38 Ill. App. 3d 959, 964-66, 349 N.E.2d 567.) Furthermore, the accountant, Mallis, testified that defendant's 1986 capital gain income was extraordinary because defendant's father sold a substantial amount of the New York assets to take advantage of the lower capital gains tax rate in 1986, and defendant's prior Federal income tax returns, admitted into evidence, are consistent with this testimony.

Apart from plaintiff's unfounded allegation that the trial court disregarded section 505(a) of the Dissolution Act in awarding her child support, plaintiff does not argue that the award was an abuse of discretion, and we conclude that it was reasonable based on the evidence presented. While section 505(a)(5) of the Dissolution Act does not enumerate the factors the trial court should consider in its determination of child support, the factors listed in section 505(a)(2) of the Dissolution Act (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2)) have been historically considered (see Ill. Rev. Stat. 1977, ch. 40, par. 505; see also Ill. Ann. Stat., ch. 40, par. 505(a), Historical and Practice Notes, at 600-01 (Smith-Hurd 1980)), and we conclude that these factors apply, to the extent pertinent and determinable, in cases where the trial court relies on section 505(a)(5) of the Dissolution Act.

Here, evidence of plaintiff's income and expenses showed that she earned approximately $584.43 for a two-week period and received child support of $400 per month for her two children from a prior marriage. Plaintiff's total household expenses for herself and her three children were $730 per month, and she spent an additional $175 per month on Pamela for meals and swimming lessons. It is clear from the record that the trial judge considered plaintiff's financial needs and considered defendant's financial needs and resources, finding that he had monthly spendable income, after prior obligations of maintenance and support, of approximately $3,000. While defendant testified that his professional corporation paid him gross wages of

$5,000 and $25,000 in April 1987 and May 1987, and the record discloses that the trial court did not consider this income, a child support award is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Such abuse "occurs only where no reasonable man would take the view adopted by the trial court." (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 812, 439 N.E.2d 1005.) While we do not here hold that the trial court, in an action for child support brought pursuant to the Parentage Act, must consider the standard of living a child would have enjoyed if the child were living with the noncustodial parent (*cf.* Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2)(c) (a relevant factor in determining child support is the standard of living the child would have enjoyed had a marriage not been dissolved)), the trial court did so in this case, and defendant does not challenge the court's order. The evidence showed that plaintiff incurs $175 per month of direct expenses attributable to Pamela plus the costs of housing and utilities. The trial court ordered child support of $500 per month "because I don't think Pamela should be required to live at the same level of the other two children [plaintiff's children from her prior marriage], because she certainly wouldn't if she was living with her father." The trial court also ordered defendant to pay all of Pamela's reasonable expenses, above and beyond $500 per month, that he would have paid if she were living with him, including her tutoring, camps, schooling, music, arts, and the like. Defendant is also obligated to pay for all of Pamela's medical, dental, optical, orthodontic, psychological and psychiatric expenses, and must maintain a life insurance policy with a face value of $100,000 naming Pamela as the beneficiary until he is no longer obligated to provide for her support. From the foregoing, we cannot conclude that the child support award was an abuse of discretion. Because plaintiff does not argue that she is entitled to monthly child support of $600 ($3,000 at 20%) based on the trial court's finding that defendant had monthly "spendable income" of $3,000, we do not address this issue.

Defendant cross-appeals the trial court's award to plaintiff of attorney fees and costs of litigation in the amount of $11,103, contending that the fees were not reasonable or necessary, plaintiff's counsel did not exhibit a high degree of responsibility in the preparation of the case, and plaintiff did not receive any benefit from her attorney's services. Section 17 of the Parentage Act authorizes the court to "order reasonable fees of counsel, experts, and other costs of the action and pre-trial proceedings." (Ill. Rev. Stat. 1985, ch. 40, par. 2517.) While there is no case law interpreting section 17, decisions rendered

under the former Paternity Act (Ill. Rev. Stat. 1979, ch. 40, par. 1351 *et seq.*) utilized the standards applicable to attorney fee awards under the Dissolution Act. (See, *e.g.*, *People ex rel. Foster v. Louder* (1981), 97 Ill. App. 3d 1104, 1108, 423 N.E.2d 1272; see also *People ex rel. Jones v. Cartledge* (1984), 125 Ill. App. 3d 510, 511, 466 N.E.2d 289 (petitioner's financial position considered in denying her attorney fees).

■■ ■ An award of attorney fees in a divorce proceeding rests within the trial court's discretion and will not be reversed absent a clear abuse of discretion. (*In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 1117, 436 N.E.2d 573.) Factors considered in awarding attorney fees include:

> "[T]he financial position of the parties; the skill and standing of the attorneys employed; the importance, novelty and difficulty of the questions raised, especially from the family law standpoint; the degree of responsibility involved from a management perspective; the time and labor required; the usual and customary charge in the community; and the benefits resulting to the client. [Citations.] Of these, the time factor is probably given the same weight or greater weight than any other factor. [Citation.] The fee allowance should provide for fair compensation but only for those services which were both reasonable and necessary to the action. [Citation.] (*In re Marriage of Zummo* (1988), 167 Ill. App. 3d 566, 573, 521 N.E.2d 621.)

Defendant argues that the award of attorney fees and costs of litigation was against the manifest weight of the evidence, was contrary to the factors set forth in Illinois case law, and was an abuse of discretion. Initially, defendant contends that there was no evidence showing the necessity of Peskind's services or that the hours expended were reasonably required for the performance of the legal services involved, and asserts that Peskind's testimony that he believed that his legal services were reasonable and necessary was insufficient.

■■ While we agree with defendant that the trial court is not bound by an attorney's opinion as to what constitutes a reasonable fee and that an attorney's generalized statement as to the time spent is an insufficient basis for a fee award (see *In re Marriage of Pease* (1982), 106 Ill. App. 3d 617, 623, 435 N.E.2d 1361), we note that the usual practice is for the attorney to submit detailed records as to the time spent (*In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 660, 506 N.E.2d 1000), and Peskind did so here. Peskind's petition for fees detailed the services rendered, the applicable hourly rate and number of hours for each service, and a copy of the original time slips

was attached to the petition. Furthermore, at the hearing on fees Peskind stated that he would testify to each item contained in the petition, and defendant responded that he had no objection to Peskind's time but only as to the time attributable to Peskind's staff.

■ Defendant also argues that the charges attributable to Peskind's staff members totalling $1,092.25 should be disallowed because he did not have an opportunity to cross-examine them at the fee hearing. We note that the trial court disallowed $900 of attorney fees and costs of litigation contained in plaintiff's fee petition, and defendant has not addressed what portion of it arose from services by Peskind's staff members, and we decline to speculate as to the amount of staff charges disallowed. While defendant did object to the staff charges without the opportunity to cross-examine those individuals charging time to this case, defendant did not seek to call them as witnesses. At the close of evidence, the trial court asked defendant whether he wished to present any further testimony, and he declined to do so. Defendant further asserts that the trial court could not consider the time records of Peskind's staff because Peskind did not formally introduce these records into evidence. Notwithstanding, these records were attached to plaintiff's petition for fees, and the matter of fixing fees is an area in which the trial judge may rely on pleadings, affidavits on file and his own experience. *In re Marriage of Brophy* (1981), 96 Ill. App. 3d 1108, 1118, 421 N.E.2d 1308.

■ Defendant also argues that plaintiff's theory of the case, that the percentage guidelines contained in section 505(a)(1) of the Dissolution Act should be strictly applied regardless of the extent of the supporting party's income, was unrealistic and caused excessive fees in this case. We note that defendant has not cited a case which contradicts Peskind's trial theory. While the procedure in Cook County prior to enactment of the percentage guidelines in section 505(a) of the Dissolution Act was to utilize percentage guidelines to establish child support only in "typical" medium-income situations (see *In re Marriage of Blaisdell* (1986), 142 Ill. App. 3d 1034, 1039-40, 492 N.E.2d 622), Cook County's procedure cannot be viewed as precedent contradicting plaintiff's trial theory that the guidelines apply regardless of the extent of the supporting party's income.

■ Defendant further asserts that plaintiff could have proved defendant's gross income in 5 or 10 minutes by utilizing his individual income tax return and that it was not necessary to depose Mallis, defendant's tax accountant, with respect to defendant's finances from the date of Pamela's birth because, prior to the enactment of section 14(b) of the Parentage Act, effective July 1, 1985, the trial court had

no discretion to award retroactive child support. We agree with the trial court that plaintiff had "a duty and an obligation to try and ascertain what Doctor Granoff's real income was," and reject defendant's assertion that the fees of plaintiff's attorney were unreasonable because he could have ascertained defendant's income by merely referring to defendant's tax return. (*Cf. In re Marriage of Kruse* (1980), 92 Ill. App. 3d 335, 338, 416 N.E.2d 40 (cost of accounting services were not unreasonable even though services primarily consisted of the compilation and verification of figures from an established set of books and records).) Furthermore, we cannot conclude that plaintiff's legal fees relating to a review of defendant's financial records from the year of Pamela's birth through the trial date were unreasonable. While defendant argues that the time spent reviewing these records was only pertinent to the issue involving retroactive child support, a review of defendant's finances from the date of Pamela's birth may have been relevant to establishing defendant's current income. Defendant reported gross wages on his 1985 and 1986 income tax returns of $2,000 each year and, in view of this fact, Peskind's investigation into defendant's income from 1980 through 1984 was warranted.

■ Defendant also argues that he should not be required to pay for plaintiff's attorney fees arising from her denial of his parental rights. Prior to the trial on the issue of child support, defendant filed numerous motions concerning visitation, and decisions relating to Pamela's education and psychological welfare. Notwithstanding defendant's failure to cite any authority to support his argument, we cannot conclude that his motions were filed in response to plaintiff's efforts to deny him his parental rights. At most, the motions and plaintiff's answers show that plaintiff and defendant had diverse views on the subject of child rearing and what they believed was in the best interest of Pamela.

■■ Defendant also contends that the attorney fee award is unreasonable because plaintiff was entitled to free representation by a State's Attorney. (See, *e.g.*, Ill. Rev. Stat. 1985, ch. 40, par. 2518(b).) The same argument based on the prior Paternity Act (see Ill. Rev. Stat. 1967, ch. 106¾, par. 54) has been rejected where the court held that the statute entitling the mother to representation by a State's Attorney in a paternity action was intended to provide an alternative procedure to retaining private counsel, and did not preclude her from retaining private counsel and petitioning the court for the related attorney fees. (*People ex rel. Adams v. Sanes* (1968), 41 Ill. 2d 381, 384, 243 N.E.2d 233, *cert. denied* (1969), 395 U.S. 910, 23 L. Ed. 2d 223,

89 S. Ct. 1752.) Furthermore, during defendant's cross-examination of plaintiff's attorney at the fee hearing, Peskind stated that he discussed with plaintiff the possibility of retaining a State's Attorney, and she declined to do so.

■■■ Defendant also argues that plaintiff's attorney fees were unreasonable because this case was simple and did not present any novel or difficult questions of law. We do not agree that this case was simple or routine, and the following comments of the trial judge support our belief:

"I watched this case progress through discovery and through trial, and he [Peskind] was faced with an extremely difficult situation. He was faced with a tax return that was prepared by a genius of an an [sic] accountant.

This doctor had the most unusual income structure of anybody I have ever seen. The money that he reaped from his medical practice he never took out of the practice. He kept putting it back in the practice, and he was building a new building, and his actual income was minimal. But he reaped at least $7,000 a month from developments that his father had out in New York in some wild arrangement that only accountants could understand, where the New York trust out there even paid the income tax on the money that was being sent to him."

Furthermore, this case presented the novel issue of whether a trial court must consider the standard of living a child would have enjoyed if living with the noncustodial parent (see, e.g., Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(2)(c)), when awarding child support pursuant to the Parentage Act.

■■■ Defendant also contends that in awarding fees this court should consider the degree of responsibility plaintiff's attorney exhibited from a management perspective and cites attorney Peskind's attempt to present a Supreme Court Rule 23 decision, In re Marriage of Ahmad (2d Dist. March 12, 1987), No. 86—329, to the trial court as precedential authority, and testimony elicited from him on cross-examination at the fee hearing that he performed two hours of work that he could have delegated to Steven Peskind or a law clerk. We find no merit in this argument.

■■■ Defendant also argues that because plaintiff did not derive any benefit from her counsel's legal services, the award of attorney fees should be reduced. Defendant argues that while plaintiff sought monthly child support of approximately $2,625, the trial court awarded only $500 per month because it rejected plaintiff's theory that the percentage guidelines contained in section 505(a) of the Dis-

solution Act should be strictly applied. Defendant's argument would in effect penalize the zealous advocate because any good-faith argument made at trial not accepted by the trial court would warrant a reduction in the attorney fee award. Furthermore, the record in this case shows that because of defendant's unusual accounting system, defendant's income was not ascertainable, not that the trial court rejected plaintiff's theory that the percentage guidelines should be applied in this case. Defendant also argues that the lack of benefit to plaintiff of her attorney's legal services is evident in light of defendant's pretrial settlement offer, which we do not consider because it is based on matters not in evidence.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

REINHARD and WOODWARD, JJ., concur.