*In re* MARRIAGE OF DANIEL J. PARTNEY, Petitioner-Appellee, and BEVERLY K. PARTNEY, Respondent-Appellant.

Fifth District   No. 5—90—0001

Opinion filed May 7, 1991.

Storment & Read, of Belleville, for appellant.

Leon G. Scroggins, of Granite City, for appellee.

JUSTICE WELCH delivered the opinion of the court:

The issue before this court involves the proper amount of child support for Daniel J. Partney II, the minor child of appellant, Beverly K. Partney, and appellee, Daniel J. Partney. Appellant brought a petition for modification of child support pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 510(b)) (hereinafter Act) in the circuit court of Madison County, seeking to raise the $500-per-month support award previously awarded by the court to an amount equal to 20% of the net income of appellee as provided by the guidelines set forth in section 505(a) of the Act (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)). The court denied the petition after hearing on April 27, 1989, but retained jurisdiction of the cause until appellee complied with a discovery order to produce certain tax returns and financial statements for 1988. Appellant filed a motion to modify or correct this order based on the production of the 1988 tax returns. The court confirmed its April 27, 1989, order denying the petition to modify child support on November 30, 1989, after hearing to review the aforementioned discovery production, and it is from the order of April 27, 1989, and this later order that appellant brings the issue before this court.

A judgment of dissolution of the parties' marriage was entered by the circuit court of St. Clair County on December 19, 1981. Pursuant to said order appellee was granted custody of Daniel J. Partney II. Appellant filed a petition for change of custody on May 19, 1987, with the Madison County circuit court and was granted custody of the minor child along with $500-per-month child support on August 13, 1987. In the instant proceeding appellant sought to modify that order and demanded appellee's 1987 and 1988 tax returns in discovery.

We have not been provided with a transcript of the February 22, 1989, hearing on the petition to modify from which the April 27, 1989, order originated. However, in the April 27, 1989, order the court found that appellee had gross income in 1988 totalling $100,000, as shown on his W-2 forms, reduced by $46,000 in losses suffered by the Pamela Enterprises, and $27,000 in principal and interest payments during 1988 on a loan incurred to comply in part with the parties' 1982 property settlement, leaving net taxable income of $27,000. The court further found that this net taxable amount should be reduced by $6,000, the amount estimated by the court to be appellee's approximate obligation for Federal and State taxes and social security contributions.

The Pamela Enterprises, four rental properties owned by appellee and his present wife, was shown on respondent's exhibit A to have had $112,486 in income but $158,701 in expenses. Those expenses were itemized by rental property in this exhibit. The court further found that the minor child, who was then 16 years old, had monthly expenses totalling $2,096 per month. These expenditures included $730 for his 1982 Trans-Am; $632 for recreation, miscellaneous activities, and allowance; and $425 for clothing and laundry. The court opined that the child's needs, as opposed to his wants, were substantially less than the itemized $2,096 per month.

We have been provided with a transcript of the November 29, 1989, hearing to reconsider the April 27, 1989, order after filing of appellee's 1988 tax return. The bulk of the testimony at this hearing concerned an issue not brought in this appeal. Appellant, however, testified that she earned $15,000 per year and that as part of the property settlement in the judgment of dissolution she received a $75,000 certificate of deposit. Appellee testified that he was paying off the mortgage on the property occupied by appellant and the minor child in the amount of $128.29 per month. Appellee's 1988 Federal income tax return, which was admitted as petitioner's exhibit 1, showed wages totalling $95,000 and Federal tax owed of $9,244. The tax return further showed a $42,707 net loss from the rental properties, as limited by Federal income tax passive activities loss regulations. The 1988 W-2 showed Federal withholding of $18,031, State income tax withholding of $2,170 and social security (FICA) withholding of $3,379. Appellee was entitled to a $9,008 refund according to the 1988 tax return.

The court found at the November 29, 1989, hearing that the gross incomes for 1988 shown at the respective hearings were within $5,000 of each other. It further found that subsection (3) of section 505(a) of the Act, which defines "net income," includes, as an allowable deduction from gross income, expenditures for the repayment of debts that represent reasonable and necessary expenses for the production of income. (Ill. Rev. Stat., 1988 Supp., ch. 40, par. 505(a)(3)(h).) The court again found that the $46,000 in losses suffered by Pamela Enterprises was an expense incurred in the attempted production of income and that the $27,000 in interest and principal for the loan incurred to comply with the property settlement was also a legitimate deduction from appellee's net income. The court apparently concluded that appellee's child support obligation should not be increased because his net income under this analysis was $1,750 per month.

The issue presented on review is whether the trial court abused its discretion in denying appellant's motion to increase child support. We believe that there was such an abuse.

■ Section 510 of the Act provides for modification of child support provisions of prior orders for support. (Ill. Rev. Stat., 1988 Supp., ch. 40, par. 510.) Section 505 of the Act specifically makes its provisions regarding the calculation of child support applicable to proceedings to modify prior child support orders and provides as follows:

"(a) In *** a proceeding for modification of a previous order for child support under Section 510 of this Act, *** the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct.

(1) The Court shall determine the minimum amount of support by using the following guidelines:

| Number of Children | Percent of Supporting Party's Net Income |
|---|---|
| 1 | 20% |

* * *

(2) The above guidelines shall be applied in each case unless the court, after considering evidence presented on all relevant factors, finds a reason for deviating from the guidelines. Relevant factors may include but are not limited to:

(a) the financial resources of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court orders a lower award, based on consideration of the factors in paragraphs (2)(a) through (2)(e) of subsection (a) of this Section, it shall make express findings as to its reason for doing so. The guidelines may be exceeded by the court without express findings, or by agreement of the parties.

(3) 'Net income' is defined as the total of all income from all sources, minus the following deductions:

(a) Federal income tax (properly calculated withholding or estimated payments);

(b) State income tax (properly calculated withholding or estimated payments);

(c) Social Security (FICA payments);

(d) Mandatory retirement contributions required by law or as a condition of employment;

(e) Union dues;

(f) Dependent and individual health/hospitalization insurance premiums;

(g) Prior obligations of support or maintenance actually paid pursuant to a court order;

(h) Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." (Ill. Rev. Stat., 1988 Supp., ch. 40, pars. 505(a)(1) through (a)(3).)

A determination of the proper amount of child support, and modification thereof, lies within the sound discretion of the trial court and will not be set aside absent an abuse of that discretion. (*In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 510, 519 N.E.2d 1095, 1099.) The factors to be considered in exercising that discretion are set forth in section 505(a)(2). (*McBride*, 166 Ill. App. 3d at 511, 519 N.E.2d at 1100.) Abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 260, 547 N.E.2d 590, 596.

■ Although we agree with appellant that the guidelines are in the nature of a mandate to the court (*In re Marriage of Pitts* (1988), 169 Ill. App. 3d 200, 206, 523 N.E.2d 664, 667), we note that an abuse of discretion can be found in awarding the guideline amount where it exceeds the child's reasonable needs and where both parents have a large income. (*Bush*, 191 Ill. App. 3d at 260, 547 N.E.2d at 596.) In the instant case, however, the issue is not before this court because the trial court awarded an amount of child support below the guidelines, but because appellant has questioned whether a passive activity investment loss qualifies as a proper deduction in the calculation of net income under section 505(a)(3) of the Act.

We note that capital investments, such as the rental properties involved in the instant case, will not produce predictable profits or losses from year to year. Arguably, passive activity investment *profits* should be included in the calculation of "net income" under section

505(a)(3) of the Act, defined as the total of all income from all sources minus the deductions listed therein. Ill. Rev. Stat., 1988 Supp., ch. 40, par. 505(a)(3); *cf. Ivanyi v. Granoff* (1988), 171 Ill. App. 3d 411, 526 N.E.2d 189 (although reviewing court would not hold that interest, dividend, and capital gain income should never enter into the computation of net income under section 505(a)(3), it found that this type of income should not be included in the supporting party's net income under the facts of this case because there was unrebutted testimony that the supporting party did not actually or constructively receive this income in spite of the fact that it was required to be reported on his Federal income tax return).

As noted above, the court may deduct from net income of the supporting parent such amount as fairly represents "reasonable and necessary expenses" for the production of income. (Ill. Rev. Stat., 1988 Supp. ch. 40, par. 505(a)(3)(h).) We have located no Illinois cases which have addressed the precise issue before this court. One recent case, however, has ruled that a supporting parent's monthly installment payments on a real estate investment were not properly deductible under section 505(a)(3)(h) of the Act, at least where the record contained no indication that those payments were reasonable and necessary for the production of the parent's income and the property was not producing income at this time. See *In re Marriage of Cornale* (1990), 199 Ill. App. 3d 134, 556 N.E.2d 806.

There have been more decisions which have addressed the issue of whether nonreimbursed business expenses are properly deductible from gross business income in the calculation of net income under section 505(a)(3) of the Act. In *In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 519 N.E.2d 1095, the appellant argued that his nonreimbursed business expenses should be excluded from his gross income in calculating his child support obligation because they were the equivalent of "expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." The reviewing court rejected this argument because the trial court specifically found that there was insufficient evidence that these expenses were necessary to generate income and because the parties themselves had defined "net income" in the original settlement agreement without including these expenses as proper deductions in the calculation of child support. (*McBride*, 166 Ill. App. 3d at 512, 519 N.E.2d at 1100.) Likewise in *In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005, the court on review agreed that unless there was proof that the business expenses were reasonable and necessary for the production of income they should not be deducted from

gross income in calculating net income for child support purposes. Among the business expenses claimed as deductions on the supporting parent's Federal income tax business profit/loss schedule were expenses for 11 business trips, depreciation, office space in the home, and wages paid to a woman with whom the parent was co-habitating. The court concluded that an award of combined maintenance and child support in the amount of 20% of the supporting parent's $150,000 gross business receipts was not an abuse of discretion. *Dwan*, 108 Ill. App. 3d at 813, 439 N.E.2d at 1009; see also *Stern v. Stern* (1989), 179 Ill. App. 3d 313, 534 N.E.2d 533 (nonreimbursed business expenses disallowed as a deduction in the calculation of child support net income where there was insufficient evidence as to the extent of the expenses).

One court has recently held that the supporting parent's nonreimbursed business expenses were deductible under section 505(a)(3)(h) since the expenses were shown to represent reasonable and necessary expenses for the production of income. (*Rimkus v. Rimkus* (1990), 199 Ill. App. 3d 903, 557 N.E.2d 638.) In *Rimkus* the reviewing court affirmed a deduction of these expenses in the calculation of net income for child support, noting that there was no challenge by the custodial spouse that the business expenses were not reasonable or necessary to the production of the supporting parent's income; as in the instant case, the custodial spouse merely challenged their qualification as a deduction under section 505(a)(3)(h) in the computation of net income. *Rimkus*, 199 Ill. App. 3d at 910, 557 N.E.2d at 643.

However, one court has disallowed some business expenses as a deduction in the calculation of net income because the provision allowing for a business debt deduction contemplates a specified repayment schedule tracking the time "such payments are due" and the asserted tax lien and attorney fees owed by the supporting spouse's business were not presented by way of such a specified repayment schedule. (*In re Marriage of Leffler* (1988), 185 Ill. App. 3d 677, 685, 542 N.E.2d 1, 5.) As in the *Leffler* case, such repayment schedule was not presented in the evidence or in the trial court's order because the $46,000 was an end-of-the-year accounting of the net business loss on the investment properties. As noted earlier, the amount of profit or loss on investments such as the real estate rental properties is correspondent only to that particular year. We also note the observation of the *Ivanyi* court that while it may be appropriate to apply tax law principles in the determination of a supporting party's net income, there is no authority for the "position that the Internal Revenue Code

'Bible' be used to determine the meaning of net income." *Ivanyi*, 171 Ill. App. 3d at 421, 526 N.E.2d at 197.

■ Because the real estate investment losses were not shown to be reasonable or necessary to the production of any income to the supporting parent and because, as such, the losses could not be presented in a specified repayment schedule, we believe the trial court erred in allowing a $46,000 deduction from appellee's gross income reported on his income taxes for 1988 when it calculated the child support obligation. Moreover, we find that the $27,000 in principal and income payments on the loan appellee incurred in order to comply with the parties' 1982 property settlement did not qualify as a deduction from appellee's net income under subsection (h) of 505(a)(3)(h) or any other section 505(a)(3) subsection. Accordingly, we find an abuse of discretion in the denial of appellant's petition to modify and find that the record supports an increased child support award in the amount of $1,423.80 per month, calculated pursuant to the section 505(a) guidelines as follows:

| Wages: | $100,000 |
| Federal tax: | (9,023) |
| State tax: | (2,170) |
| FICA: | (3,379) |

$$( \$85,428 / 12 ) \times 20\% = \$1,423.80$$

However, as noted earlier, an award of the guideline amount which exceeds the reasonable needs of the child can also be an abuse of discretion. (See *Bush*, 191 Ill. App. 3d at 260, 547 N.E.2d at 596.) Because the court did not reach a determination of what the reasonable needs of the child actually were, we must remand this case for such a determination. We therefore reverse the circuit court of Madison County's orders of April 27, 1989, and November 29, 1989, and remand the case for a determination of the reasonable needs of the minor child and the entry of an order awarding appellant monthly child support, based on that determination, retroactive to the date of the filing of the petition to modify on October 11, 1988.

Reversed and remanded.

HOWERTON and LEWIS, JJ., concur.