DELORES POSEY, Plaintiff-Appellant, v. LEONARD TATE, Defendant-Appellee.

First District (6th Division)    No. 1—94—3764

Opinion filed October 6, 1995.

Albert I. Zemel, of Chicago (Ira A. Moltz, of counsel), for appellant.

Constantine P. Xinos, of Chicago, for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

On October 19, 1993, plaintiff Delores Posey filed a petition for modification of child support against defendant Leonard Tate in the circuit court of Cook County, pursuant to section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510 (West 1992)). In her petition, plaintiff sought to increase the previously ordered monthly child support award of $330, in accordance with the guidelines set forth in section 505(a) of the Act. (750 ILCS 5/505(a) (West 1992).) On May 24, 1994, the trial court entered an order wherein it set the monthly support award at $683.06. Plaintiff subsequently filed a petition to reconsider, arguing that the trial court improperly permitted defendant to reduce his net income by the amount of his tax-sheltered earnings shown on his 1993 W-2 form, which were presumably for retirement, and by the amount of depreciation expense shown on his 1993 Federal tax return, which related to four real estate investment properties he owned. On August 29, 1994, the trial court denied plaintiff's petition to reconsider. Also, in that order, with regard to plaintiff's attorney fees of $4,962, the trial court directed defendant to pay 40% of that amount. Plaintiff now appeals. The pertinent facts are as follows.

In December 1982, the parties' only child, Leonard, was born. In February 1987, the trial court entered an order requiring defendant to pay plaintiff $330 per month as child support for Leonard. Plaintiff's subsequently filed petition to modify the child support award was based on her having learned that defendant had a substantial increase in income since the time that the original order was entered. Plaintiff also alleged a substantial increase in the expenses connected with the support of their minor child. Plaintiff submitted an income and expense affidavit, reflecting net monthly income of $2,650.29, which included the $330 monthly child support payment from defendant. The affidavit showed total monthly living expenses of $3,301.88 and credit card obligations of $75, leaving her with a monthly income deficit of $726.59. She had no savings.

As the May 24, 1994, order indicates, the trial court determined, *inter alia*, that defendant's 1993 net income was $40,983.83. The court then took 20% of that figure, pursuant to section 505(a) of the Act, to arrive at an annual child support award of $8,196.76 or a monthly obligation of $683.06. In calculating defendant's net income, the court permitted defendant to deduct from his gross income depreciation expense in the amount of $26,437, relating to four rental properties, and deferred compensation in the amount of $3,318.12. The court also ordered that the child support award be retroactive to October 19, 1993, the date plaintiff filed her petition for modification. It directed defendant to pay plaintiff the sum of $2,608.13 for this period, after giving him credit for the $330 per month he had already paid her. Defendant agreed to pay this amount in one lump sum on or before June 1, 1994. In her motion for reconsideration, plaintiff argued that the trial court erred in computing defendant's net income to be only $40,983.83. She referred to defendant's 1993 income tax return and W-2 form, which she alleged established a net income after taxes of $46,058, which included tax-sheltered earnings of $3,218. (We note that defendant's W-2 form indicates this amount to be $3,318.) Plaintiff further argued that depreciation expense in the amount of $26,437 should be added back in to arrive at a net annual income of $72,495. Plaintiff asserted that 20% of that figure would compute to an annual child support award of $14,499, as opposed to the $8,196.76 established by the court. In its order denying plaintiff's petition to reconsider, the trial court also ruled on plaintiff's counsel's fee petition, ordering defendant to pay 40% of the fee petition as modified by the court. Defendant was ordered to pay $992.49 to plaintiff's counsel, which was based on 33.08 hours at $150 per hour.

On appeal, plaintiff contends that the trial court erred when it allowed defendant to deduct deferred compensation and depreciation

expense from his gross income, which thereby served to diminish his net income, the amount upon which his monthly child support obligation was calculated. Plaintiff also contends that the trial court abused its discretion when it ordered her to pay 60% of her attorney fees. In the alternative, she contends that the court miscalculated the dollar amount of the portion of her attorney fees which defendant was obligated to pay pursuant to the order.

Under sections 505 and 510 of the Act, the trial court has discretion to set and modify child support where it is appropriate. (750 ILCS 5/505, 510 (West 1992).) A reviewing court will not disturb a child support award or modification unless the trial court is found to have abused its discretion. (*In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 597 N.E.2d 847.) An abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. *In re Marriage of Partney* (1991), 212 Ill. App. 3d 586, 571 N.E.2d 266.

Section 505(a) of the Act requires the trial court to set the minimum amount of child support at 20% of the noncustodial parent's net income, unless the trial court finds a reason to deviate from this percentage. (750 ILCS 5/505(a) (West 1992).) Section 505(a)(3) defines "net income" as:

"[T]he total of all income from all sources, minus the following deductions:

(a) Federal income tax (properly calculated withholding or estimated payments);

(b) State income tax (properly calculated withholding or estimated payments);

(c) Social Security (FICA payments);

(d) Mandatory retirement contributions required by law or as a condition of employment;

(e) Union dues;

(f) Dependent and individual health/hospitalization insurance premiums;

(g) Prior obligations of support or maintenance actually paid pursuant to a court order;

(h) Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income ***." 750 ILCS 5/505(a)(3) (West 1992).

Plaintiff argues that it was error for the trial court to have allowed defendant to deduct from his gross income both the $3,318.12 in deferred compensation and the $26,437 in depreciation expense on his rental properties, where neither item is listed as a permissible deduction under section 505(a)(3). We shall consider each item separately.

■ We first note that defendant has neglected to address the deferred compensation issue in his brief. However, at oral argument, upon being asked by this court why defendant failed to do so, defense counsel replied that he could not find authority on this point. He further commented that the amount is insignificant and that if this court should find defendant owes 20% of that amount, the defense would not argue the matter.

In any event, it was error to allow defendant to deduct from his gross income the $3,318.12 in deferred compensation. (*In re Marriage of Yaxley* (1994), 259 Ill. App. 3d 544, 631 N.E.2d 252.) Because deferred compensation falls under none of the allowable deductions specified under section 505(a)(3), the $3,318.12 shall be included in defendant's gross income.

■ With regard to the depreciation deduction, section 167 of the Internal Revenue Code of 1986 provides in pertinent part that with regard to depreciation "[t]here shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) *** of property used in the trade or business, or *** of property held for the production of income." (26 U.S.C.A. § 167 (West 1988).) However, it is well settled that "tax-reported income does not provide conclusive evidence of either [the supporting parent's] gross or net income under the Act, which provides its own guidelines on deductions from *** income that reflect different policies and purposes than the Federal tax code." *Carpel*, 232 Ill. App. 3d at 818, 597 N.E.2d at 857.

Our review of relevant Illinois case law reveals that this precise issue has not been previously addressed. The only category of deductions listed in section 505(a)(3) under which investment property depreciation expense could possibly fall would be subsection (h), which permits deductions for "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." (750 ILCS 5/505(a)(3)(h) (West 1992).) We find that it does.

Black's Law Dictionary defines "depreciation" as the "spreading out [of] the cost of a capital asset over its estimated useful life. *** A decline in value of property caused by wear or obsolescence and *** usually measured by a set formula which reflects these elements over a given period of useful life of property. [Citation.] [The] [c]onsistent, gradual process of estimating and allocating cost of capital investments over estimated useful life of asset in order to match cost against earnings." Black's Law Dictionary 441 (6th ed. 1990).

Thus, depreciation is not income, but a return of capital. To subject depreciation expense, which has been allowed as a deduction on a supporting parent's tax return, to child support would be to as-

sess such support against capital instead of income. At the end of a capital asset's useful life, its productive capacity is exhausted. The useful life tables mandated by the Internal Revenue Service, which in this instance establish that the useful life of the rental properties is 27½ years, provide uniformity. This is particularly so where the straight line method of depreciation is used, as opposed to an accelerated form which could distort net income, denying a child proper support. We therefore find that the deduction of straight line depreciation expense from net income by defendant, a taxpayer who is obligated to pay child support, is fair and proper, where he has shown such a deduction to be a "reasonable and necessary expense for the production of income," and that it is subject to a specified repayment schedule, as contemplated by section 505(a)(3)(h).

We find *In re Marriage of Partney* (212 Ill. App. 3d 586, 571 N.E.2d 266), a case upon which plaintiff heavily relies, to be distinguishable. In *Partney*, the custodial parent brought a petition for modification of child support to increase the amount set in the original judgment. The noncustodial father owned four rental properties, which sustained tax losses totalling $46,000. The trial court allowed the losses to be deducted from the father's net income in establishing his child support obligation. This court found that the trial court had abused its discretion in allowing the losses to be used as a deduction under section 505(a)(3), in part because the losses were not shown to be reasonable or necessary for the production of any income to the supporting father. See also *In re Marriage of Heil* (1992), 233 Ill. App. 3d 888, 599 N.E.2d 168; *In re Marriage of Cornale* (1990), 199 Ill. App. 3d 134, 556 N.E.2d 806.

The *Partney* court further found that the provision in section 505(a)(3)(h), allowing for a business debt deduction, contemplates a specified repayment schedule tracking the time such payments are due. The court then found that such a repayment schedule did not exist in that case, since the $46,000 was merely an end-of-the-year accounting of the net business losses on the investment properties. The court noted that "the amount of profit or loss on investments such as the real estate rental properties is correspondent only to that particular year" and, as such, the $46,000 loss "could not be presented in a specified repayment schedule." *Partney*, 212 Ill. App. 3d at 592-93, 571 N.E.2d at 270; see also *In re Marriage of Lefler* (1988), 185 Ill. App. 3d 677, 542 N.E.2d 1.

In our case, unlike *Partney*, plaintiff does not object to defendant's having included in his net income the passive activity loss relating to his rental properties, as reported on his 1993 tax return. Rather, she takes exception specifically to his taking of the depreciation expense

relating to those properties. Importantly, we find that a passive activity loss would not have occurred here but for the taking of straight line depreciation by defendant. Moreover, as we have previously stated, depreciation expense does lend itself to being presented in a specified repayment schedule.

We therefore conclude that the trial court did not abuse its discretion in allowing defendant to deduct the $26,437 in depreciation expense on his investment properties from the net income figure used to calculate his child support obligation under the Act.

Accordingly, we find that the record supports a monthly child support award in the amount of $738.33 per month, calculated pursuant to the section 505(a) guidelines as follows:

| | |
|---|---|
| $55,396 | (Adjusted Gross Income from 1993 Tax Return) |
| - 8,040 | (Federal Income Tax) |
| - 1,855 | (State Income Tax) |
| - 3,571 | (FICA) |
| - 946 | (Medicare) |
| $40,984 | |
| + 3,318 | (Deferred Compensation) |
| $44,302 | (Net Income Under section 505(a)(3) of Act) |
| x .20 | (Child Support Guideline Under Section 505(a)(1)) |
| $ 8,860 | (Defendant's Annual Support Obligation) |
| ÷ 12 | |
| $ 738.33 | (Defendant's New Monthly Support Obligation). |

The new monthly support payment of $738.33 due plaintiff is effective October 19, 1993, the date plaintiff filed her petition for modification. With regard to the additional amounts defendant now owes, due to the retroactive increase in support payments from October 19, 1993, defendant shall pay plaintiff the sum of $1,270.21 for this 23-month period. This amount reflects a credit for the monthly payments of $683.06 he had made since that date.

■ Finally, plaintiff contends that the trial court abused its discretion in ordering defendant to pay only $992.49 of her attorney fees, which totalled $4,962, where his 1993 income and assets were far in excess of hers. Alternatively, plaintiff contends that the portion of her total fees which defendant was directed to pay was improperly calculated in the court's August 29, 1994, order.

The payment of attorney fees is the primary responsibility of the party to whom services were rendered, and the trial court's order with respect to attorney fees in post-dissolution proceedings will not be disturbed on appeal absent an abuse of discretion. (*In re Marriage*

*of Florence* (1994), 260 Ill. App. 3d 116, 632 N.E.2d 681.) In the present case, we believe it is necessary to consider the propriety of the trial court's order in light of the fact that plaintiff will be receiving an additional $55.27 per month in support as a result of our holding. This amount is in addition to the $683.06 per month she is already receiving pursuant to the trial court's May 1994 order. This additional sum brings plaintiff's gross monthly income to $3,968.73 ($3,180.40 (salary/wages shown on plaintiff's 1993 income/expense affidavit) + $50 (dividends shown on affidavit) + $738.33 (child support)) and her net monthly income to $3,058.62 (gross monthly income of $3,968.73—required monthly deductions shown on affidavit of $910.11). Based on these calculations, we believe plaintiff has the wherewithal to pay 60% of her attorney fees, which amounts to $2,977.20. We therefore decline to disturb the trial court's ruling in this regard.

We agree with plaintiff, however, that the trial court erred when it entered the order, as that order contained a mathematical miscalculation in arriving at the portion of plaintiff's attorney fees which defendant was obligated to pay. The August 29, 1994, order indicates that the court approved for payment 33.08 hours of the attorney's time at an hourly rate of $150. The total amount thus due the attorney, as previously stated, equals $4,962, with the order directing defendant to pay 40% of that amount. However, the order erroneously states that 40% of $4,962 equals $992.49, when in actuality it equals $1,984.80. Accordingly, we hereby amend the order to reflect a judgment against defendant in the amount of $1,984.80.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Judgment affirmed in part and reversed in part.

EGAN and ZWICK, JJ., concur.