THE DEPARTMENT OF PUBLIC AID *ex rel.* JACQUELYNN JENNINGS, Plaintiff-Appellee, v. RODNEY R. WHITE, Defendant-Appellant.

Third District   No. 3—96—0307

Opinion filed January 8, 1997.

Paul L. Mangieri, of Barash & Stoerzbach, of Galesburg, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Marita Clare Sullivan, Assistant Attorney General, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, Rodney White, appeals from an order of the trial court that found his Federal Employers' Liability Act (FELA) settlement was "income" for child support purposes. The trial court based its finding on section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505 (West 1994)). After carefully reviewing the record, we affirm.

## FACTS

On October 17, 1989, Jacquelynn Jennings gave birth to Cody

Jennings. The defendant was never married to Jacquelynn. The Illinois Department of Public Aid (Public Aid) established the defendant's paternity of Cody on April 16, 1993, and the defendant was ordered to pay child support. However, on August 26, 1993, the defendant's child support obligation was abated to zero due to his lack of income.

On June 15, 1992, the defendant sustained injuries to his back while employed by Burlington Northern Railroad (Burlington Northern). Pursuant to FELA, the defendant filed a lawsuit against Burlington Northern. On September 14, 1995, the defendant settled his case with Burlington Northern for $200,000.

Subsequently, Public Aid filed a petition to modify the defendant's child support obligation. The basis of Public Aid's petition was the defendant's increased income from his FELA settlement. A hearing was held which determined that the following expenses were deducted from the settlement amount:

| | |
|---|---|
| Case expenses: | $ 9,285.65 |
| Attorney fees: | $ 47,678.59 |
| Personal expenses: | $ 7,390.82 |
| Contribution to Railroad retirement board: | $ 6,023.96 |
| Unpaid bills: | $ 500.00 |
| SUBTOTAL: | $ 70,879.02. |

In addition to the above-referenced expenses, the defendant testified that he borrowed $1,200 per month against his anticipated settlement for monthly living expenses. The total loan amount was $37,578.87. The defendant stated that he is currently living with and supporting his girlfriend, as well as three additional children he has fathered out of wedlock.

The special assistant State's Attorney filed two requests to produce in an attempt to force the defendant to submit documentation concerning the breakdown of his FELA award. The defendant never provided the documentation.

During the hearing, the defendant testified that the entire FELA settlement was for his pain and suffering. The following exchange occurred during the defendant's cross-examination:

"Q. [Special Assistant State's Attorney]: Mr. White, you say that all of this was for pain and suffering. Do you have a copy of a settlement statement or agreement in which that is explicitly stated?

A. [The defendant]: That says pain and suffering on it?

Q. Yes.

A. I think so.

Q. Do you have any documentation at all that that was the sole purpose of the settlement, pain and suffering?

A. Yeah. I think so.

Q. What is the documentation you have?

A. What is it? I don't know what it is. It's somewhere. It's at home and my other attorney has a copy of it.

Q. But today all we have is your statement?

A. That's correct."

After hearing the evidence, the trial judge said that he was reluctant to rely solely on the defendant's testimony concerning the breakdown of the settlement and noted: "I'm concerned because your client indicated that there were written documents, settlement documents, that would support that argument. They've not been tendered to the court. They've not been provided at this point and that appears to have been the subject of a request by [the special assistant State's Attorney] that has not been complied with at this stage."

Following the judge's comments, the defendant's attorney stated, "I would, therefore, request permission from this Court to provide this Court with the written documentation concerning the fact that this award was based upon pain and suffering." The trial judge then gave each side 10 days to submit any written documentation.

The defendant's attorney submitted three documents to the court: (1) a letter from the defendant's FELA attorney, Mark Dupont, in which Dupont states, "I checked my file and we do not have anything from the railroad to the Railroad Retirement Board showing that the settlement was paid to factors other than wage loss"; (2) Dupont's settlement statement showing case expenses and disbursements; and (3) Burlington Northern's release of all claims, which does not specify how the award was apportioned.

In a letter to the attorneys after the hearing, the judge noted, "[t]he release executed by the respondent does not specify how the award is apportioned. If no portion of the award represents lost wages, it seems rather unusual that $6,023.96 of the award was a mandatory contribution to the Railroad Retirement Board." The judge then concluded that the entire amount, after the deduction of expenses, would be considered income for calculating the defendant's child support obligation.

On March 16, 1996, the trial court entered an order. The court found that the FELA settlement was income and subject to payment of child support under section 505 of the Act. The court allowed $70,879.02 in deductions, but did not allow a deduction for the defendant's loan. The court concluded that the loan "was in essence a part of the Federal Employer's Liability Act award." As a result,

the trial court determined that the net income for child support purposes was $129,120.98 ($200,000 minus $70,879.02).

The court then departed from the 20% statutory guideline and awarded 15% in child support, or $19,368.15. The judge gave three reasons for his departure from the statutory guideline: (1) the FELA award was a one-time distribution of a large sum of money that would be sufficient to pay "regular" child support for a substantial period of time; (2) the parties have a modest standard of living that does not mandate strict compliance with the guideline; and (3) the defendant received no income for a significant period of time and has other support obligations.

The trial court ordered the defendant to pay the lump sum of $19,368.15 to the special assistant State's Attorney for division between Public Aid and Jacquelynn. The lump sum was to come from $20,000 retained in a trust by the defendant's FELA attorney.

## ISSUE ON APPEAL

The trial court's decision to depart from the statutory child support guidelines was not appealed. As a consequence, the sole issue before this court is whether the trial court erred in concluding that the defendant's FELA settlement was income for purposes of determining child support.

## ANALYSIS

A. Standard of Review

■ The findings of a trial judge as to net income and the awarding of child support are within the sound discretion of the trial court and will not be disturbed on review absent an abuse of that discretion. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 103, 655 N.E.2d 1144, 1148 (1995).

B. The Definition of Net Income

■ Section 505 of the Act provides that net income for child support purposes is "defined as the total of all income from all sources" minus various enumerated deductions. 750 ILCS 5/505(a)(3) (West 1994). The Act does not define "income." The question of whether a FELA settlement, or any portion of it, is income under the Act is an issue of first impression in this State.

It is well-settled law that the legislature's inclusive language— "all income from all sources"—is to be broadly applied. See *In re Marriage of Dodds*, 222 Ill. App. 3d 99, 103, 583 N.E.2d 608, 611 (1991). Section 505's language has been construed to include various items such as a tax refund attributable to maintenance payments

made to a former spouse (*In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 732, 661 N.E.2d 505, 508 (1996)); deferred compensation contributions (*Posey v. Tate*, 275 Ill. App. 3d 822, 826, 656 N.E.2d 222, 225 (1995)); a military allowance (*In re Marriage of McGowan*, 265 Ill. App. 3d 976, 976-77, 638 N.E.2d 695, 696 (1994)); severance pay received in the year prior to the period for which support was due (*In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 446-47, 624 N.E.2d 1241, 1253 (1993)); a parent's "*pro forma*" capital account to which his firm made allocations based on the firm's annual performance (*In re Marriage of Winne*, 239 Ill. App. 3d 273, 285, 606 N.E.2d 777, 784 (1992)); income from investments and bonuses from a closely held corporation (*In re Marriage of Olson*, 223 Ill. App. 3d 636, 652, 585 N.E.2d 1082, 1093 (1992)); passive income from bonds and securities (*In re Marriage of Harmon*, 210 Ill. App. 3d 92, 95, 568 N.E.2d 948, 950 (1991)); and nonrecurring income (*In re Marriage of Hart*, 194 Ill. App. 3d 839, 850, 551 N.E.2d 737, 744 (1990)).

Recently, in the case of *In re Marriage of DeRossett*, 173 Ill. 2d 416 (1996), the Illinois Supreme Court gave broad effect to the language of section 503 of the Act. The court concluded that a worker's compensation award, arising out of a claim accrued during the marriage, is marital property under section 503 of the Act. *DeRossett*, 173 Ill. 2d at 421. The court noted that the Act's definition of "marital property" as "all property acquired by either spouse subsequent to the marriage" creates a rebuttable presumption that all property acquired after the marriage is marital property. *DeRossett*, 173 Ill. 2d at 420.

Given the analogous language of section 505, regarding income for child support purposes, we hold that section 505 creates a rebuttable presumption that all income, unless specifically excluded by the statute, is income for child support purposes.

■ As the trial court noted, the record is unclear concerning the apportionment of the defendant's FELA award. The defendant urges this court to remand the matter pursuant to *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 668 N.E.2d 589 (1996). In *Villanueva*, the court remanded the cause to enable the parties to present evidence concerning the apportionment of the respondent's personal injury award. *Villanueva*, 282 Ill. App. 3d at 151, 668 N.E.2d at 593. Without addressing the merits of the *Villanueva* decision, we conclude that a remand of the instant case is not warranted because the trial court has already given the defendant numerous opportunities to produce the evidence necessary to show that the award was for elements other than lost wages. *Cf. Villanueva*, 282 Ill. App. 3d 147, 668 N.E.2d 589.

The record in this case clearly shows that the defendant failed to produce the requisite information and ignored the special assistant State's Attorney's pretrial motions. As such, we find no abuse of discretion in the trial court's determination that the award was entirely for lost wages. See *Dodds*, 222 Ill. App. 3d at 103, 583 N.E.2d at 611 (finding that a settlement under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) is income for purposes of child support).

C. The Personal Bank Loan

■ Next, the defendant argues that the trial court erred in not allowing a deduction for the $37,578.87 bank loan that he used for personal expenses during the pendency of his FELA case. From our review of applicable law, we find no abuse of discretion in the trial court's decision to exclude the loan amount as a deduction.

Section 505 of the Act defines net income as all income from all sources, minus: (a) Federal income tax; (b) State income tax; (c) social security tax; (d) mandatory retirement contributions; (e) union dues; (f) dependent and individual health insurance premiums; (g) prior obligations of support actually paid pursuant to court order; and (h) expenditures for the repayment of debts that represent reasonable and necessary expenses for the production of income. 750 ILCS 5/505(a)(3) (West 1994); *Hart*, 194 Ill. App. 3d at 849, 551 N.E.2d at 743.

The defendant has offered no evidence or case law supporting his position that his personal bank loan qualifies as a deduction under any of the subsections of section 505(a)(3) of the Act. As such, we conclude that the trial court properly found that the loan was part of the FELA award and not deductible under section 505 of the Act. See *In re Marriage of Partney*, 212 Ill. App. 3d 586, 593, 571 N.E.2d 266, 270 (1991) (disallowing a section 505 deduction for a loan incurred in order to comply with the parties' property settlement).

D. Section 706.1 of the Act

■ In addition, the defendant argues that section 706.1 of the Act is a more exhaustive definition of what constitutes net income for child support purposes. Section 706.1(A)(4) defines income as "any form of periodic payment to an individual." 750 ILCS 5/706.1(A)(4) (West 1994). That section of the Act is designed to "secure the payment of child support through third parties who are normally obligated to pay income to the supporting parent in the form of periodic payments." *Dodds*, 222 Ill. App. 3d at 104, 583 N.E.2d at 611. The defendant argues that his one-time FELA settlement does not qualify

as income because it is not a periodic payment. The trial court rejected the defendant's argument, finding that section 706.1 does not limit the definition of net income found in section 505.

The defendant's argument was made and rejected by the court in *Dodds*, which stated that "[t]he definition of income [in section 706.1] is intended to define the term for the purposes of that section only; there is no indication that it is intended to define the term for any other purpose of the Marriage Act." *Dodds*, 222 Ill. App. 3d at 101, 583 N.E.2d at 610. We find *Dodds* persuasive on this issue and find the defendant's argument without merit.

## CONCLUSION

For the reasons stated, from our review of the record, we find no abuse of discretion in the trial court's decision. The trial court properly concluded, based on the evidence presented, that the defendant's FELA award was income for child support purposes. Also, the trial court did not err in refusing to allow the defendant to deduct from his settlement the amount of a personal bank loan. In addition, the trial court was correct in rejecting the defendant's claim that section 706.1 of the Act limits the definition of net income for child support purposes. Accordingly, we affirm the judgment of the circuit court of Knox County.

Affirmed.

BRESLIN and HOLDRIDGE, JJ., concur.