*In re* MARRIAGE OF GREGORY M. NELSON, Petitioner-Appellant, and
TRACIE S. NELSON, Respondent-Appellee.

Third District   No. 3—97—0716

Opinion filed June 26, 1998.

652

HOLDRIDGE, J., specially concurring.
HOMER, P.J., specially concurring in part and dissenting in part.

Peter H. Lousberg (argued), of Lousberg, Kopp, Kutsunis & Weng, of Rock Island, for appellant.

Tym J. Kerr (argued), of Kewanee, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Petitioner Gregory Nelson appeals the trial court's judgment dissolving his six-year marriage with the respondent, Tracie Nelson. Greg argues that the trial court: (1) abused its discretion in computing his net income for purposes of child support; (2) erred in ordering him to reimburse the marital estate for payments made on nonmarital assets and in characterizing certain farmland as marital property; and (3) abused its discretion in apportioning the marital property between the parties. For the following reasons, we affirm in part, reverse in part and remand with directions.

## FACTS

In January 1997 a judgment of dissolution was entered dissolving Greg and Tracie's marriage of six years. The Nelsons lived together as husband and wife until March of 1995. At that time, Greg was 38 and Tracie was 31 years of age. Two children were born to the marriage. Lindsey was three and Derek was five months when the parties separated. Greg had one son from a previous marriage who also lived with the parties during the marriage.

Throughout the marriage, Greg worked as a farmer while Tracie was employed as a full-time bank teller. Greg's gross income for 1996 was $43,297, for 1995 it was $90,780 and for 1994 it was $73,877. The record indicates that Tracie earned approximately $20,000 a year. Her income fluctuated to as low as $5,800 in 1995. In addition to working in part-time and full-time teller positions, Tracie was responsible for caring for three children, running family errands and doing various household tasks. Tracie used a large portion of her earnings to pay for household and family expenses.

Greg and Tracie resided on property that Greg bought on contract from his mother in 1986. The property included the couple's home and 160 acres of farmland. While married, Greg and Tracie made several payments on the purchase contract.

In August of 1992, Greg and his father purchased a farm referred to as "Clover Township" farm. In 1993 Tracie's name was added to the deed. The farm was owned one-half by Greg's father and one-half in joint tenancy between Greg and Tracie. Tracie signed the note and the mortgage. Over the next few years, Greg's father presented him with three substantial checks made out to Greg Nelson. Greg testified that he and his father had an express agreement that the checks were a gift to him only and were to be used against the farm's principal. However, no written agreement was produced at trial. The funds were deposited in Greg and Tracie's joint checking account and used to pay the mortgage on the Clover Township farm.

Greg also owned several pieces of nonmarital farm machinery. During the marriage, Greg purchased replacement farm equipment with cash and the trade-in of older machinery. He paid the cash difference between the trade-in value and the cost of the replacement machinery with funds that were generated during the marriage. On his tax returns Greg deducted certain depreciation expenses related to the machinery and the operation of his farming business.

In the judgment of dissolution, the trial court awarded Tracie child support in the amount of $350 a week. It arrived at this figure by averaging Greg's net income for 1994, 1995 and 1996 as reported on his federal income taxes. The court made additional findings regarding numerous contested property issues. It found that Greg failed to present clear and convincing evidence to overcome the presumption that the Clover Township farm was marital property. It ordered Greg to reimburse the marital estate for the payments made during the marriage to reduce the principal indebtedness on the marital residence. In addition, he was ordered to reimburse the estate for the cash used to purchase the farm machinery. After identifying various property items as marital and nonmarital, the court divided the marital estate equally between Greg and Tracie. Tracie was awarded marital property in lieu of maintenance in the amount of $121,000. Greg was ordered to pay the amount in installments over a three-year period. Greg's posttrial motion was denied and he appeals.

## ANALYSIS

We first address Greg's contention that the trial court erred in computing net income for purposes of determining child support.

■ A court may order a supporting parent to pay child support in an amount that is reasonable and necessary for the child's well-being. 750 ILCS 5/505(a) (West 1996). Generally, the minimum amount of child support that can be awarded for two children is 25% of the supporting parent's net income. 750 ILCS 5/505(a)(1) (West 1995).

■ Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) defines net income for purposes of child support as the total of all income from all sources minus several enumerated deductions. 750 ILCS 5/505(a)(3) (West 1996). Those deductions include: (a) federal income tax; (b) state income tax; (c) social security tax; (d) mandatory retirement contributions; (e) union dues; (f) dependent and individual health insurance premiums; (g) prior obligations of support paid under court order; and (h) expenditures for the repayment of debts that represent reasonable and necessary expenses for the production of income. 750 ILCS 5/505(a)(3) (West 1996); *Department of Public Aid ex rel. Jennings v. White*, 286 Ill. App. 3d 213, 675

N.E.2d 985 (1997). The findings of a trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 655 N.E.2d 1144 (1995).

Greg contends that the child support award of $350 per week is unreasonable in light of his income as reported on his 1996 federal tax return. We disagree.

■ The court arrived at the weekly child support figure of $350 by averaging Greg's net income over three consecutive years—1994, 1995 and 1996. In 1994 Greg's income (total income less Tracie's wages, salaries and tips) as claimed on his federal tax return was $56,230. His total income for 1995 was reported as $84,884, and in 1996 he produced a total income of $43,297. It is clear that Greg's income fluctuated from year to year depending on the profitability of the farming industry. Under these circumstances the method of income averaging employed by the court was a reasonable means of determining Greg's net income for purposes of child support. See *Freesen*, 275 Ill. App. 3d at 104, 655 N.E.2d at 1149 (income averaging necessary when supporting parent's income fluctuates); *In re Marriage of Elies*, 248 Ill. App. 3d 1052, 618 N.E.2d 934 (1993) (reasonable to average three years' income in determining net income). Thus, the court properly averaged Greg's income for the previous three years.

■ Greg also claims that the court improperly computed net income by failing to deduct depreciation expenses in calculating his net income. Greg insists that his depreciation expenses for farm machinery should be deducted from net income as a "reasonable and necessary expense[ ] for the production of income." 750 ILCS 5/505(a)(3)(h) (West 1996). By contrast, Tracie contends that while such an expense may or may not be necessary to produce income, it is not an expenditure for the repayment of debts. Thus, according to Tracie, excluding it from net income was proper.

Analogous opposing arguments were presented in *Gay v. Dunlap*, 279 Ill. App. 3d 140, 664 N.E.2d 88 (1996). In that child support case the defendant wished to deduct a certain amount from his net income for depreciation and numerous business expenses. In holding that the expenses were not deductible from net income under the Act, the court noted that to claim a deduction the proponent must show: (1) that the expense is a reasonable and necessary expense for the production of income; and (2) that it falls into the category of a debt repayment as evidenced by a specific repayment schedule. *Gay*, 279 Ill. App. 3d at 148, 664 N.E.2d at 94; *cf. In re Marriage of Partney*, 212 Ill. App. 3d 586, 571 N.E.2d 266 (1991) (trial court erred in deducting investment losses from net income when losses were not evidenced to be

necessary for income production and no repayment schedule was demonstrated).

Greg claimed a depreciation expense for farm equipment on his federal income tax returns. A review of the record indicates that neither party disputed that this equipment was necessary for the production of income. However, to claim this depreciation expense as a deduction, Greg must also show that the deducted expense was an expenditure for the repayment of debt. Greg deducted the depreciated value of purchased farm equipment over several years as a means of deflating his adjusted gross income for tax purposes. Nothing in the record demonstrates that the depreciation expenses claimed on his tax forms were utilized to repay an outstanding debt. Nor was any specific repayment schedule provided as a result of the expense. Thus the expense does not reasonably fall into the category of debt repayment. Accordingly, we hold that the trial court did not abuse its discretion by excluding Greg's depreciation expense in determining his net income.

■ Greg also argues that the court incorrectly refused to deduct payments of principal on farm operating loans from his net income. We disagree. Greg's lender provided him with a sum of money to cover annual operating expenses. Those farm operating expenditures appeared on the schedule F of his federal tax return. The court used the schedule F to determine Greg's farming income for purposes of computing his total net income. Thus, allowing Greg another deduction for the repayment of farm operating loans would permit him to take the same deduction twice. It defies common sense to allow a businessperson to deduct both expenses incurred in purchasing the inputs and his payments to retire the debt incurred to cover the expenses. We find that the trial court correctly refused to deduct the repayment of farm operating loans. Accordingly, we affirm the trial court's calculation of Greg's net income.

■ In addition, Greg insists that the court's child support award was an abuse of discretion because it ordered Greg to maintain health insurance coverage for the children when Tracie could have obtained coverage at a lower premium.

In its order the court expressly provided that Greg was to provide medical, dental, optical and pharmaceutical insurance coverage for the two children. However, it also emphasized that, in the event Tracie had insurance coverage provided through her place of employment, she should apply for such coverage and be reimbursed for the costs by Greg upon his written request that she do so.

The court allowed Greg to either provide the coverage individually or through Tracie's employment. The record indicates that coverage was available for both children through Tracie's employer at a much

lower premium rate than through Greg's insurer. Considering the financial position of both parties, we find that the court did not abuse its discretion in ordering Greg to provide insurance coverage for the children through Tracie's place of employment.

■ Next we must determine whether the court erred in ordering Greg to reimburse the marital estate for marital funds contributed to nonmarital assets.

Section 503(c)(2) of the Act provides a right to reimbursement for contributions made by one estate that have enhanced the value of an item of property classified as belonging to another estate. 750 ILCS 5/503(c)(2) (West 1996). The reimbursement is made to the contributing estate, not to the contributing spouse. *In re Marriage of Morse*, 143 Ill. App. 3d 849, 493 N.E.2d 1088 (1986). A contribution to an estate must be traceable by clear and convincing evidence to establish a right of reimbursement. *In re Marriage of Albrecht*, 266 Ill. App. 3d 399, 639 N.E.2d 953 (1994).

Greg contends that the court incorrectly required reimbursement to the marital estate for purchase contract payments on the nonmarital residence. We disagree.

The court determined that the residence in which the parties lived during their six-year marriage was a nonmarital asset. But while married, Tracie and Greg made purchase contract payments on the residential home. These payments were traceable to their joint checking account. While we recognize that the residence was a nonmarital asset, Tracie's contributions to the marital residence were significant. Tracie worked full time, provided health care benefits for the two children and completed household chores. Without these efforts, funds to pay the purchase contract of the nonmarital asset may not have been available. Thus, reimbursement of the payments is not against the manifest weight of the evidence.

■ Greg next argues that the ordered reimbursement to the marital estate of funds used to purchase nonmarital farm machinery was erroneous.

Greg used funds from the couple's joint checking account to purchase farm machinery. The machinery was purchased using trade-in equipment that was obtained prior to the marriage. But the cash difference was supplied with marital property. Accordingly, the court did not abuse its discretion in ordering Greg to reimburse the marital estate the value of the cash payment for the nonmarital farm machinery.

■ In addition, Greg claims that the Clover Township farm should have been designated nonmarital property because his father provided cash gifts which he used for payment on the farm's mortgage. We disagree.

Property acquired during a marriage is presumed to be marital property absent clear and convincing evidence establishing otherwise. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 616 N.E.2d 1379 (1993). Nonmarital property may be presumptively transmuted into marital property as a gift to the marital estate by an affirmative act of the contributing spouse, such as placing the assets into a form of joint tenancy. *In re Marriage of Durante*, 201 Ill. App. 3d 376, 559 N.E.2d 56 (1990). A trial court's characterization of an asset will be overturned only if it is against the manifest weight of the evidence. *In re Marriage of Leisner*, 219 Ill. App. 3d 752, 579 N.E.2d 1091 (1991).

One-half interest in Clover Township farm was acquired during the marriage and held in joint tenancy by Tracie and Greg. Tracie signed the note securing the mortgage. Therefore, the farm is presumed to be marital property absent clear and convincing evidence showing otherwise. Greg was unable to produce a written agreement to support his allegation that the checks his father presented him were gifts to the nonmarital estate rather than the marital estate. The record indicates only that the checks were placed in the parties' joint checking account and used to pay the loan. No agreement, oral or otherwise, was adduced at trial indicating that Tracie was no longer a co-owner of the farm. Thus, Greg failed to rebut the presumption that the money used to pay for the property was a gift to the marital estate. Accordingly, the trial court's characterization of the Clover Township farm as marital property was not against the manifest weight of the evidence.

The last question is whether the court abused its discretion in distributing the marital property between the parties.

Section 503 of the Act provides that a trial court is to divide the marital property in just proportions taking into account all relevant factors, including: the value of the marital property; the economic circumstances of each spouse; the income of each spouse; and each spouse's age, health and employability. 750 ILCS 5/503(d) (West 1996). Just proportions does not mean strict equality, but only an equitable division based on the surrounding circumstances. *Albrecht*, 266 Ill. App. 3d at 402, 639 N.E.2d at 956. A trial court's division of marital property will not be reversed absent an abuse of discretion. *In re Marriage of Eidson*, 235 Ill. App. 3d 907, 601 N.E.2d 298 (1992). An abuse occurs when no reasonable person would take the view adopted by the trial court. *In re Marriage of Cheger*, 213 Ill. App. 3d 371, 571 N.E.2d 1135 (1991).

After carefully reviewing the property distribution and payments ordered in this case, we find that Tracie was awarded a portion of the marital estate nearly equal to the portion awarded to Greg. We fail to

find any support in the record for Greg's conclusion that the marital estate is equal to $54,540, thus Tracie should be awarded only $27,270. In addition, we do not agree that Tracie's contribution to the acquisition of the marital property was minimal. Tracie completed necessary household chores that helped Greg continue working on the farm. During the marriage, she worked, cared for three children and paid for many of the family's day-to-day expenses. Therefore, we find that the trial court's division of marital assets equally between the parties was not an abuse of discretion.

However, we acknowledge that the trial court failed to assign the value of the marital furnishings Tracie possessed to the portion of the marital estate she received. The trial court assigned a value to Greg's furniture and furnishings. But it neglected to assign a value to the furnishings Tracie took with her that were derived from the marriage. Greg testified that the marital furniture Tracie retained at the time of separation was worth $17,450. A list of this furniture was entered into evidence. It included a VCR, a bedroom set, a baby's bedroom set, an oak table, and many other household furnishings. His testimony was not contradicted. The value of the marital estate should be adjusted to include the $17,450 of marital furniture, and that marital asset should be credited to Tracie.

We have carefully considered all the remaining contentions of the parties and believe that no further discussion is necessary.

Accordingly, we reverse and remand this case to the circuit court with directions to credit Tracie's portion of the marital estate for the marital furnishings she possesses and adjust Greg's property distribution payment accordingly.

For the foregoing reasons, the judgment of the circuit court of Henry County is affirmed in part, reversed in part and remanded for further proceedings consistent with this order.

Affirmed in part, reversed in part and remanded.

JUSTICE HOLDRIDGE, specially concurring:

I agree with the majority's holdings herein. I write separately on the issue of depreciation. In calculating net income under the Illinois Marriage and Dissolution of Marriage Act (Act), the *only* deductions from gross income that are allowable are those specifically enumerated in the Act. 750 ILCS Ann. 5/505(a)(3) *et seq.* (Michie 1996). While there may be circumstances where a reduction in income for depreciation would be appropriate, the clear and unambiguous language of the Act does not permit it.

I respectfully disagree with Justice Homer's special concurrence

wherein he indicates he would apply generally accepted accounting principles and hold that depreciation expenses may be deducted from net income despite the "curious wording" of section 505(a)(3)(h) of the Act. Although this suggestion may make some sense if we were writing legislation, we are not. The only way we could do this would be to ignore the plain and unambiguous language of the Act.

The Act as written is clear; depreciation allowances given by the federal government as deductions against taxable income on an individual's federal income tax return and depreciation allowances on balance sheets prepared by accountants are not "expenditures for the repayment of debt." Simply put, depreciation is not repayment of a debt and cannot be deducted against gross income under the Act. See *Gay v. Dunlap*, 279 Ill. App. 3d 140 (1996).

Our supreme court recently decided the case of *In re Marriage of Minear*, 181 Ill. 2d 552 (1998), wherein it had an opportunity to rule on this issue. Unfortunately, it chose not to decide whether a depreciation expense may ever be excluded from consideration in determining an individual's available income. *Minear*, 181 Ill. 2d at 559-60. It is unfortunate that the high court chose not to resolve this issue when the opportunity was presented. Until the high court finally chooses to resolve this issue, or the legislature changes the language of the Act, courts should decline the invitation to act as a super-legislative body and rewrite the Act to allow for the adjustment of net income by the amount of the depreciation allowance claimed on the payor's federal tax return or balance sheet.

PRESIDING JUSTICE HOMER, specially concurring in part and dissenting in part:

I believe the trial court erred in adding back all of Greg's schedule F depreciation in determining his net income for purposes of child support. Therefore, I must respectfully dissent from that part of the majority's opinion affirming the trial court on this issue.

In computing Greg's farm income the trial court disallowed his deductions for all schedule F depreciation. Citing section 505(a)(3)(h) of the Act, defining "net income" (750 ILCS 5/505(a)(3)(h) (West 1996)), the majority agreed with the trial judge, pointing out that "[n]othing in the record demonstrates that the depreciation expenses claimed on his tax forms were utilized to repay an outstanding debt." 297 Ill. App. 3d at 656. Such rigid adherence to the language of the statute is overly simplistic and ignores the basic and fundamental principles of accounting.

"Income" is defined as the "[t]he true increase in amount of wealth which comes to a person during a stated period of time."

Black's Law Dictionary 763 (6th ed. 1990). "Depreciation" means "spreading out the cost of a capital asset over its estimated useful life"; "decline in value of property caused by wear or obsolescence"; and "[c]onsistent, gradual process of estimating and allocating cost of capital investments over estimated useful life of asset in order to match cost against earnings." Black's Law Dictionary 441 (6th ed. 1990). Considering these generally accepted accounting principles, it is clear that depreciation expenses of deteriorating assets, such as farm machinery, can constitute reasonable and necessary expenses for the production of income.

As has been observed elsewhere, section 505(a)(3) may work satisfactorily for employees who receive a paycheck, but it cannot be rigidly applied to determine the income of self-employed individuals. *In re Marriage of Minear*, 287 Ill. App. 3d 1073, 1086, 679 N.E.2d 856, 866 (1997) (Cook, J., dissenting), *aff'd*, 181 Ill. 2d 552 (1998); see also *Gay*, 279 Ill. App. 3d at 150-52, 664 N.E.2d at 95-96 (Cook, P.J., concurring in part and dissenting in part).

Ours is not the first court to consider depreciation within the context of section 505(a)(3)(h), which provides a deduction from net income for "[e]xpenditures for repayment of debts that represent reasonable and necessary expenses for the production of income." 750 ILCS 5/505(a)(3)(h) (West 1996). Two other Illinois Appellate Court districts, reaching disparate conclusions, have also recently considered the question of whether depreciation constitutes such an expenditure. See *Posey v. Tate*, 275 Ill. App. 3d 822, 827, 656 N.E.2d 222, 226 (1st Dist. 1995) (holding that deduction of straight line depreciation is proper when shown to be a reasonable and necessary expense for the production of income); *Minear*, 287 Ill. App. 3d at 1076-77, 679 N.E.2d at 859-60 (4th Dist. 1997) (holding that depreciation is not an expenditure for the repayment of debt and therefore not deductible).[1]

The curious wording and limited context of section 505(a)(3)(h) provide little assistance in evaluating whether depreciation can be a proper deduction in a given situation. For that reason, we should avoid the strained analysis engaged in by other courts and instead apply generally accepted accounting principles to this issue.

I would hold that depreciation expenses may be deducted to arrive at net income for purposes of the child support guidelines when (1)

---

[1]In affirming the appellate court's decision in *Minear*, our supreme court held that it was unnecessary to determine whether depreciation may in all cases be excluded in determining net income, because the appellant in that case failed to offer sufficient evidence to support his claimed depreciation deduction. *In re Marriage of Minear*, 181 Ill. 2d at 559-60.

the cost of the capital asset has been shown to be a reasonable and necessary expenditure for the production of income, and (2) the claimed deduction reasonably represents the decline in the value of the asset caused by wear or obsolescence. Such a test would not place us at odds with the statute defining "net income," since we would be holding that proper depreciation deductions are necessary to ascertain the amount of "income from all sources" in the first instance. See 750 ILCS 5/505(a)(3) (West 1996).

For these reasons, I would reverse the trial court's calculation of Greg's net income and remand the cause for redetermination of child support.