**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 190559-U

Order filed February 18, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| TIMOTHY WASHBURN, | ) | Henry County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-19-0559 |
| and | ) | Circuit No. 15-D-105 |
| | ) | |
| KELLY WASHBURN n/k/a KELLY | ) | |
| POKRAJAC, | ) | |
| | ) | Honorable Richard A. Zimmer, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

**ORDER**

¶ 1      *Held*: (1) The trial court did not err by rejecting respondent's request for reimbursement to the marital estate; (2) the trial court did not abuse its discretion in dividing the marital estate; and (3) the trial court did not err in denying respondent's dissipation claims.

¶ 2      Respondent, Kelly Washburn n/k/a Kelly Pokrajac, appeals a judgment of dissolution of marriage. She contends the trial court erred in: (1) denying her claim for reimbursement to the marital estate; (2) dividing the marital estate; and (3) denying her dissipation claims. We affirm.

I. BACKGROUND

¶ 4 The parties married on March 21, 2009. Petitioner, Tim Washburn, filed a petition for dissolution of marriage on July 24, 2015. The cause proceeded to a trial on the distribution of marital property and Kelly's claim that Tim dissipated marital assets. Kelly sought reimbursement to the marital estate for the enhanced nonmarital property owned by Tim. She also claimed Tim dissipated assets by purchasing and selling vehicles for his trucking business and for taking a vacation with his daughter.

¶ 5 Prior to the marriage, Tim purchased a house in Coal Valley, Illinois. Kelly and Tim lived together in the home for the duration of the marriage. Tim paid the mortgage, insurance, home equity line of credit, and expenses for the house throughout the marriage. During the marriage, the outstanding debt for the home decreased by $30,216. The house also had a home equity line of credit, which decreased by $2,720.82 while the parties were married. In addition, Kelly used a gift to make $2950 in improvements to the home. Two months before trial, Tim sold the home for $180,000. Tim received approximately $16,200 in net proceeds from the sale.

¶ 6 Also, before the marriage, Tim and his father purchased and co-owned a 50-acre farm. The two split the expenses and income equally. The original loan amounted to $160,000. Tim's half-share of the indebtedness decreased by $20,308 during the marriage.

¶ 7 Tim rented a shed from his father in Morton, Illinois. Both Tim and his father testified that Tim had no ownership interest in the property. Tim rented the property to work on and store trucks for his business. He paid $500 per month to rent the space. Despite not having an ownership interest in the property, Tim acknowledged that his accountant claimed depreciation for the building on Tim's tax returns. Tim explained that he told his accountant what he paid for use of

the building. He did not tell his accountant that he lacked an ownership interest in the property or building.

¶ 8        Tim worked with his father on the farm. Tim also ran his own trucking company, Washburn Trucking. He bought and sold vehicles depending on the company's needs. Tim also testified that in the course of his trucking activities, he would sometimes sell a truck or semi-trailer and purchase a replacement. This occurred before, during, and after the marriage. He testified that he would usually recognize a nominal gain when he bought and sold equipment. He would use the proceeds to pay off debt or toward purchasing replacement vehicles.

¶ 9        Tim used the same personal and business account at IH Mississippi Valley Credit Union. As to the value of the company at the time of the dissolution proceedings, Tim testified that the trucking business had a $10,000 truck, a $58,000 to $60,000 Chevy Silverado, and a camper worth $8000. The trucking company had an outstanding debt of $80,000. Tim also purchased a semi-truck and a trailer for $105,000 with corresponding debt of the same.

¶ 10        Tim had a personal retirement account with Charles Schwab. The account had $15,143.57 in assets acquired prior to the marriage. During the course of the marriage, Tim deposited $22,800 into the account. During the marriage, Tim made a $36,000 withdrawal from the account. He testified that he was "broke" at the time and needed the money to make payments on the parties' credit cards. He estimated that 80% of the payments went to business expenses and the remaining 20% went to paying household expenses. At the time of dissolution, his account had a value of approximately $11,000.

¶ 11        During the marriage, Kelly worked for her father as an office manager. During the marriage, she paid the gas, internet, and water bills for the home. Tim used his income from the farm and his trucking business to pay the mortgage, home equity line of credit, home insurance,

property taxes, and remaining household expenses. She deposited her salary into her separate personal bank account. Kelly had two retirement accounts. One account had a value of $831.93 prior to the marriage. At the end of the marriage, the account had a value of $1228.60. Her other retirement account had a value of $8809.45.

¶ 12     Kelly testified that the income generated by Tim's farming and trucking operations financed their home and household expenses throughout the marriage. Tim also paid the property taxes for their home. Tim left the home in August of 2015. From that point until January 2017, Kelly remained in exclusive possession of the home. Tim continued to pay the mortgage, home equity line of credit, insurance, property taxes, and household bills. Kelly testified that she only paid the gas, electric, and water bills during the time she remained in the home.

¶ 13     Kelly left the home and moved to Florida. She worked in the accounting department of True Concept Title in Florida. She took personal property from Tim's home with her to Florida. She also continued to possess her PT Cruiser, which she acquired prior to the marriage.

¶ 14     Kelly had a Disney credit card prior to the marriage, eventually adding Tim to the account when they married. Tim used the card to purchase fuel and pay other business expenses because the card accumulated points. Tim eventually maxed out the credit card. Kelly continued to make payments on the card and removed Tim from the account. The card had a balance of $11,283.24, which consisted of a majority of charges made for Tim's business. The card also had $3500 in rewards points. The parties also had a Cabela's credit card. The card had a balance of $8772.68. Kelly claimed that she contributed to 52% of the balance and Tim contributed 48% of the balance.

¶ 15     As to the claims of dissipation, Tim testified that he took a vacation to Disneyworld with his daughter, his girlfriend, and his girlfriend's children. Tim used some of the credit card points for the trip. According to Tim, his girlfriend paid for the hotel room and the two split other

expenses evenly. In addition, Tim testified that he sold the dually truck and Jacob's truck for $8000 in total. He deposited the money into the family bank account and used the money for regular expenses.

¶ 16      Ultimately, the court denied Kelly's claims for reimbursement to the marital estate for Tim's nonmarital home, nonmarital farm, and Tim's trucking business. The court found that the marital estate had already been compensated by use of the property and benefited from the income generated by the farm and Tim's trucking business. The court also denied Kelly's claim for reimbursement for the shed on the basis that Tim had no ownership in the property. The court awarded each party their personal retirement accounts. The court awarded each party the personal property in their possession. The court equally distributed the parties' credit card rewards. It split the balance of the Cabela's credit card balance, assigning 52% to Kelly and 47% to Tim. The court assigned the entirety of the Disney credit card balance as well as repayment to Kelly ($11,170.12). The court also rejected Kelly's claims of dissipation.

¶ 17      II. ANALYSIS

¶ 18      On appeal, Kelly raises three arguments. First, she argues the trial court erred in denying her request for reimbursement to the marital estate. Second, she contends the trial court erred in its ultimate division of marital assets. Third, she contends the trial court erred when it denied her claim that Tim dissipated marital assets.

¶ 19      A. Reimbursement

¶ 20      Kelly contends the trial court erred when it denied her request to reimburse the marital estate for the following items: (1) payments made for the mortgage, home equity line of credit, and improvements to Tim's nonmarital home; (2) payments made for Tim's nonmarital farm; (3) rental payments for the shed; (4) deposits into Tim's retirement account; (5) assets acquired by

Tim's trucking business; and (6) other various items. A trial court's determination that one estate of property is entitled to reimbursement from another will not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 657 (1998).

¶ 21     First, we consider Kelly's claim for reimbursement for contributions to Tim's nonmarital home and farm during the marriage. As to the home Tim purchased prior to marriage, Kelly claims she is entitled to a marital contribution of $35,887.06. She bases this on the reduction in the mortgage indebtedness during the marriage ($30,216.24), the reduction in the home equity line of credit during the marriage ($2720.82), and the use of Kelly's gift money to install a new patio and sidewalk on the property ($2950). Kelly also claims the marital estate is entitled to $20,308 in reimbursement for the reduction in indebtedness to the farm Tim co-purchased with his father prior to the marriage.

¶ 22     Illinois courts have previously held that a marital estate is not entitled to reimbursement for mortgage payments toward nonmarital property when the marital estate has already been compensated for its contributions by use of the property during marriage. See *In re Marriage of Crook*, 211 Ill. 2d 437, 454 (2004) (citing *In re Marriage of Snow*, 277 Ill. App. 3d 642 (1996)); *In re Marriage of Albrecht*, 266 Ill. App. 3d 399 (1994).

¶ 23     In *Snow*, the appellate court held that the marital estate was not entitled to reimbursement of $25,000 contributed to the nonmarital estate through the payment of the mortgage on a nonmarital home because the parties had lived in the nonmarital residence during the time that the contributions were made; therefore, the marital estate had already been compensated for its contributions. *Snow*, 277 Ill. App. 3d at 650. Similarly, in *Albrecht*, the appellate court held that the trial court must determine whether the marital estate has already been compensated for

contributions made to nonmarital property by use of the property during the marriage. *Albrecht*, 266 Ill. App. 3d at 401.

¶ 24    Here, we find that the trial court did not abuse its discretion when it denied Kelly's request to reimburse the marital estate for Tim's nonmarital home and farmland. Tim's nonmarital home provided the parties with a place to live during the short-term marriage. The income generated from the farm and Tim's trucking business went into a family and business account, which provided for payment of bills, expenses, vacations, food, clothing, and other amenities that benefited the marital estate. It is also notable that Kelly remained in the nonmarital home exclusively from August 2015 to January 2016. During this time, Tim continued to pay the mortgage, home equity line of credit, taxes, and other household expenses. In short, these non-marital assets provided such a significant benefit to the marital estate that reimbursement is unwarranted.

¶ 25    Next, we summarily reject Kelly's argument that the marital estate should be reimbursed for payments Tim made to rent his father's shed for Tim's trucking business. As Kelly concedes, Tim has no property interest in the shed. Tim rented it from his father. While Tim's tax records showed that he claimed depreciation on the property, both he and his father testified that Tim had no ownership interest in the property. The trial court found Tim and his father credible on this point. We will not disturb this credibility determination. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 642 (1993) (the determination of all issues concerning the credibility of the parties and their witnesses or the weight to give the evidence lies with the trier of fact). As Tim had no property interest in the building, the marital estate is not entitled to reimbursement for rental payments made by Tim.

¶ 26    Kelly also claims the marital estate is entitled to reimbursement for the $22,800 Tim deposited into his retirement account during the marriage. Initially, Kelly ignores her individual contribution of $9,226 into her own retirement account during the marriage. She, however, does not claim that the marital estate should be reimbursed for her retirement account's growth. In addition, at the time of the hearing, Tim's retirement account was worth only $11,000. Tim withdrew $36,000 from the Schwab account on October 31, 2014. Tim testified that he was "broke" when he made the withdrawal. He used the proceeds to make several payments for the Chase credit card totaling about $33,527. He also made a $1500 payment toward the Cabela's credit card. He calculated that about 80% of the payments were business related, while the remaining payments were related to household expenses. Again, Tim's farming and trucking business provided a substantial benefit to the marital estate. Given this, we find no abuse of discretion in the trial court's decision to simply award each spouse their respective retirement accounts.

¶ 27    Next, Kelly contends that the marital estate is entitled to reimbursement for the vehicles acquired by Tim's trucking business during the marriage. Kelly fails to offer any explanation as to how Tim's trucking business grew in value as a result of contributions from the marital estate. To the contrary, Tim testified that he would break even on the transactions. The evidence shows that any liquidity Tim had in the trucking business's assets was offset by equally sized debts. Unsurprisingly, Kelly does not argue that the marital estate should also assume the debts attached to the trucking business. Given the evidence, and Kelly's failure to develop a specific argument on this issue, we cannot say the trial court abused its discretion in denying reimbursement for the vehicles purchased by Tim's trucking business.

¶ 28  Finally, Kelly notes "other miscellaneous items and points of concern," to which she claims the marital estate should be reimbursed. She notes that Tim sold two vehicles late in the marriage for $8000. She also notes that in August 2015, Tim spent $2477.83 at Best Buy. Tim also paid $1350 for two guns. Tim also retained the joint federal income tax refunds for 2014 and 2015 ($4158 and $47 respectively). In addition, Tim redeemed $1348 in rewards from his credit card and continued to use the couple's Disney credit card for business expenses. We reject Kelly's scattershot argument. Like the argument above (*supra* ¶ 27), it is unclear how Kelly claims the marital estate should be reimbursed. In fact, the personal property appears to have been split evenly between the parties. In addition, the tax refunds were used to pay the property taxes on the marital home. Further, the court equally apportioned the credit card rewards and ordered Tim to repay and assume the outstanding Disney credit card debt.

¶ 29  In reaching our conclusion, we reject Kelly's reliance upon *In re Marriage of Nelson*, 297 Ill. App. 3d 651 (1998), and *In re Marriage of McCoy*, 225 Ill. App. 3d 966 (1992). We find each case distinguishable on the facts. In each case, the spouse seeking reimbursement made a significant contribution to the nonmarital asset. Unlike *Nelson* and *McCoy*, there is no evidence that Kelly made any significant contribution related to the nonmarital home, farm, or Tim's trucking business. To the contrary, the vast majority of expenses were paid for by Tim's farming and trucking activities.

¶ 30                    B. Division of Marital Property

¶ 31  Next, Kelly contends the trial court abused its discretion when it divided the marital property. A trial court is to divide the marital property in just proportions, considering all relevant factors, including: the value of the marital property; the economic circumstances of each spouse; the income of each spouse; and each spouse's age, health, and employability. 750 ILCS 5/503(d)

(West 2014). Just proportions do not mean strict equality, but only an equitable division based on the surrounding circumstances. *Albrecht*, 266 Ill. App. 3d at 402. A trial court's division of marital property will not be reversed absent an abuse of discretion. *In re Marriage of Eidson*, 235 Ill. App. 3d 907 (1992). An abuse occurs when no reasonable person would take the view adopted by the trial court. *In re Marriage of Cheger*, 213 Ill. App. 3d 371 (1991).

¶ 32    At the outset, we note that Kelly's argument relies upon her belief that the marital estate is entitled to reimbursement from the value of the nonmarital home, nonmarital farm, and Tim's trucking business assets. As we have already found, the marital estate is not entitled to reimbursement. Therefore, our analysis is limited to those marital assets subject to division.

¶ 33    Considering the remaining assets and liabilities, the marital estate is nominal. The parties were awarded their respective retirement accounts. Kelly's retirement accounts were valued at about $10,000. Tim's retirement account valued at around $11,000. The marital estate also consisted of the party's personal property. The record is unclear as to the value of the personal property, but it appears the items were equally divided. The parties also equally split the various credit card rewards earned during the marriage. As far as marital debt is concerned, the parties essentially split the balance of the Cabela's credit card (Tim $4210.85 and Kelly $4561.83). However, Tim absorbed the entire Disney credit card debt, requiring him to reimburse Kelly for the amount she previously paid for the credit card. This debt amounted to $11,170.12. In sum, the parties equally divided the marital assets, while Tim assumed a large share of the marital debt.

¶ 34    Moreover, the evidence shows that Kelly was 33 years old at the time of the hearing. She was in good health. At the time of the hearing, she had stable employment for a year. She had medical and dental health insurance benefits from her employment. She offered no evidence that she was unable to reasonably acquire assets and income in the future. In light of the division of the

marital property and the remaining factors, we cannot say the trial court's division of the marital property amounted to an abuse of discretion.

¶ 35                                    C. Dissipation

¶ 36        Finally, Kelly argues the trial court erred in denying her two dissipation claims against Tim. We review a trial court's decision on the dissipation of assets for an abuse of discretion. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-70 (2006).

¶ 37        Dissipation refers to a spouse's use of marital property for his or her sole benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. *In re Marriage of Miller*, 342 Ill. App. 3d 988, 994 (2003). Whether a party has dissipated marital assets depends upon the facts of a particular case. *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 983 (1992). "The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the marital funds were spent." *Id.* If the expenditures are not documented adequately by the party charged with dissipation, courts will affirm a finding of dissipation. *Id.* at 984. General and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation. *Id.*

¶ 38        First, Kelly claims the trial court erred when it denied her claim that Tim dissipated assets in purchasing and selling vehicles through his trucking business at the end of the marriage. We disagree. Significantly, we have already found that the marital estate is not entitled to reimbursement for the assets acquired by Tim's trucking business. To constitute dissipation, Tim would have to use *marital* assets to the benefit of his nonmarital property. On that basis alone, there is no dissipation. In addition, the evidence established that Tim purchased and sold vehicles for the trucking business during the course of the marriage. The court found it credible that Tim would obtain vehicles, trailers, or other equipment in the normal course of business. Tim testified

that he broke even on the transactions. When Tim sold an item, the proceeds were used to service existing debt or toward replacement equipment. He was not in the business of buying and selling vehicles. He ran a trucking and farming operation. He would purchase and sell vehicles as necessary for the operation of his businesses. There is no evidence that these actions constituted dissipation.

¶ 39   Second, Kelly claims "surely the trial court erred in failing to hold that Tim dissipated several thousand dollars when he spent points and monies and took his girlfriend and her 2 children on a Florida vacation. Indeed, the above-mentioned [*sic*] just the most obvious dissipated assets." We reject Kelly's undeveloped, two-sentence argument. Tim did take his daughter on a Florida vacation with his girlfriend and her two children. However, his girlfriend paid for the hotel and the two equally paid expenses. There is no evidence that Tim spent thousands of dollars on the trip. Instead, the evidence indicates that Tim used rewards points from the Disney credit card. Notably, the trial court required Tim to credit Kelly for the use of those rewards. Under these circumstances, the trial court correctly found that no dissipation occurred.

¶ 40                                    III. CONCLUSION

¶ 41   For the foregoing reasons, we affirm the judgment of the circuit court of Henry County.

¶ 42   Affirmed.